Blanche CHRISTMAN

v.

Philip V. PARROTTA and Germaine R. Parrotta.

Supreme Judicial Court of Maine.

Aug. 2, 1976.

. Marshall, Raymond & Beliveau, by John V. Bonneau, Laurier T. Raymond, Jr., Lewiston, for plaintiff.

Fales & Fales, by Roscoe H. Fales, John L. Hamilton, Lewiston, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE,* POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Blanche Christman brought an action against Germaine and Philip Parrota, her daughter and son-in-law respectively, seeking a judgment declaring her the owner of a one-half undivided interest in certain real property in Lewiston.

From a Superior Court judgment in favor of the plaintiff, the defendants have appealed. We deny their appeal.

The judgment could have rested on the following facts [1]:

Germaine Christman, Blanche and Joachim Christman's eldest daughter, married Phillip Parotta in 1946. Thereafter the Christmans [2] and the Parrottas both resided in Lewiston, saw one another frequently, spent summers together at a lakeside camp owned by the Christmans, and generally enjoyed a very close family relationship.

---

* Mr. Justice WEATHERBEE sat at oral argument and participated in conference but died before this opinion was adopted.

1. Neither party requested that the presiding Justice make designated findings of fact, M.R. Civ.P. 52(a), and the court's order of judgment does not distinguish between findings of

fact and conclusions of law. "Given this procedural posture, we assume that the court found all the facts necessary to support the decision rendered." *Cobb v. Cougle,* Me., 351 A.2d 110, 111, n. 1.

2. Joachim Christman died in 1970.

In the spring of 1955, the Parrottas became interested in buying a house. Thinking that the purchase of a single-family dwelling was beyond their means, the Parrottas approached Mrs. Christman, who was then 55 years old, and asked her if she would be interested in joining with them to buy a two-family home. Mrs. Christman was amenable to this proposal and, after canvassing the market, the parties decided to buy a two-story, two-family residence on Newman Street in Lewiston.

Mr. Parrotta obtained financing in the form of a "G.I."—secured mortgage through the Androscoggin County Savings Bank. The down payment on the property was shared equally between the Parrottas and Mrs. Christman.[3] After the purchase was consummated on July 7, 1955, Mrs. Christman asked the Parrottas why she had not been requested to "sign some papers." The Parrottas explained to her that G.I. mortgage regulations prohibited the designation of multiple owners in the mortgage or the deed.

This explanation was apparently satisfactory to Mrs. Christman although, over the years, she continued to ask the Parrottas for tangible proof of her interest in the property. The Parrottas at no time attempted to disabuse Mrs. Christman of her belief that she was a co-owner. Instead, they either ignored or made light of her inquiries, leaving her with the impression that she was a co-owner, but that written evidence of her interest was unavailable and, in any event, unnecessary.

From the time that she moved into the second-story apartment in the Newman Street house in September, 1955 until the summer of 1971, when the family argument which apparently precipitated this litigation occurred, Mrs. Christman paid one-half of the monthly mortgage payments, real estate taxes and oil and water bills. She also contributed a like portion toward occasional improvements that were made on the house, and, while he was alive, Mrs. Christman's husband performed a lion's share of the routine maintenance work that was required on the property. Relations between Mrs. Christman and the Parrottas remained amicable throughout this period.

In the summer of 1971, for reasons which are not material to this case, the Parrottas initiated eviction proceedings against Mrs. Christman. In turn, the plaintiff commenced the present lawsuit, seeking legal recognition of the one-half interest in the property to which she believes she is entitled.

■ These facts as we assume them to have been found by the presiding Justice are supported by credible evidence and are therefore not clearly erroneous. We accept them as conclusive. M.R.Civ.P. 52(a); *Cobb v. Cougle,* Me., 351 A.2d 110, 113 (1976); *Atlantic Acoustical & Insulation Co. v. Moreira,* Me., 348 A.2d 263, 266 (1975).

After the trial, the court issued a judgment decreeing

(1) "that Blanche Christman is the equitable owner subject to a mortgage held by the Androscoggin County Savings Bank, of an undivided one-half interest in [the real estate in question];"

(2) "that Defendants Philip V. Parrotta and Germaine R. Parrotta hold said undivided one-half interest as constructive trustees for the Plaintiff Blanche Christman."

The defendants have raised four arguments for our consideration which we set out in the language of the appellants' brief and answer in due course.

I

"The judgment of the court below is at variance with the pleadings and the is-

---

3. The record is unclear as to whether the down payment was $1400 or $1600.

sues actually litigated and is therefore void."

■ The appellants would have us believe that the sole issue raised by the pleadings and addressed at trial was whether the plaintiff had any interest in the Newman Street property by virtue of an alleged oral contract entered into between the parties prior to the date of the purchase. The constructive trust remedy imposed by the Superior Court represents, in the words of the defendants, "a theory of recovery foreign to the pleadings and the intentions of the parties; a theory of recovery with elements different from those which the parties believed would be in issue."

The appellants' allegations are simply not borne out by the record. While it is true that the plaintiff sought specific performance of an alleged oral contract between herself and the defendants, she additionally sought recovery on the alternative ground that the Parrottas held an undivided one-half interest in the property as constructive trustees for her. Alternative theories of relief are, of course, permissible under M.R.Civ.P. 8(a). As for the Parrottas' bald assertion that the constructive trust remedy is "foreign" to the pleadings, we respectfully direct the appellants' attention to the plaintiff's complaint which includes, *inter alia*, a demand for

"Judgment against Defendants that they hold said real property *in trust* for Plaintiff," (emphasis added)

as well as a request for a judicial declaration

"That Plaintiff is the *equitable owner* of one-half (½) interest in title to said premises." (Emphasis added.)

Language of similar import appears in the plaintiff's pre-trial memorandum, which was incorporated by reference into the court's pre-trial order.

The record plainly shows, then, that the question of the existence of a constructive trust was properly before the court. The ensuing judgment was therefore within the scope of the issues tendered by the parties, and the defendants' assertion that such judgment is void is without merit. See *Warren v. Waterville Urban Renewal Authority*, Me., 290 A.2d 362, 366 (1972).

II

"The evidence neither showed an oral contract to convey the property in question, nor sufficient part performance of such a contract for an order of specific performance."

■ As we have seen, the presiding Justice decreed that the defendants hold an undivided one-half interest in the property as *constructive trustees* for the plaintiff. The judgment is in no way premised on a determination that the defendants are *contractually* obligated to convey an undivided one-half interest in the property to the plaintiff. The court chose to rest its decision not on contract principles, but on the law relating to constructive trusts. In these circumstances, whether the evidence would have supported a decree of specific performance is a hypothetical question which we will not consider. *Lund ex rel. Wilbur v. Pratt*, Me., 308 A.2d 554, 559 (1973); *Hazzard v. Westview Golf Club, Inc.*, Me., 217 A.2d 217, 224 (1966).

III

"Even if the existence of a constructive trust was in issue, the evidence did not support the judgment."

The imposition of a constructive trust is appropriate upon a finding that one person has abused a confidential relation to acquire or retain an interest in property, thereby unjustly enriching himself at the expense of another. *Chandler v. Dubey,* Me., 325 A.2d 6, 8 (1974). Although the Justice below did not explicitly ground his imposition of a constructive trust on a determination that the Parrottas abused a confidential relation which existed between themselves and Mrs. Christman, the facts as we assume them to have been found by the Superior Court clearly warrant such a conclusion.

In our recent decision in *Ruebsamen v. Maddocks,* Me., 340 A.2d 31, 35 (1975), we explained that

> The salient elements of a confidential relation are the actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation.

We are fully satisfied that the relationship between Mrs. Christman and the Parrottas falls within this definition of a "confidential relation." While kinship alone does not suffice to establish a confidential relation, the instant case, like *Ruebsamen,* presents a situation "where the blood or family relationship is in a close degree so that the imposition of great trust and the letting down of all guards and bars is natural." *Id.* The Parrottas were the moving and dominant force in the parties' joint decision to purchase the Newman Street residence in 1955. By unhesitatingly advancing one-half of the down payment on the property to the Parrottas, and by faithfully paying her share of the mortgage balance and expenses, the plaintiff demonstrably reposed "actual trust and confidence in the judgment and abilities of [the defendants]." *Id.* at 35–36.

The plaintiff's showing of the existence of a relation of confidence between herself and the defendants, coupled with proof that the Parrottas realized a benefit from that relation, *viz.,* ownership of the Newman Street property, had the procedural effect of creating a presumption that the entire transaction through which the appellants acquired title to the property was permeated by undue influence of the plaintiff by the defendants. *Id.* at 36–37. It then became the defendants' burden to rebut the presumption by coming forward with "evidence tending to affirmatively show entire fairness on [their] part and freedom of the [plaintiff] from undue influence." *Id.* at 37.

On the evidence before the court, the presumption of undue influence was unrebutted. Although both Mr. and Mrs. Parrotta testified that what Mrs. Christman perceived as a down payment was actually a gift, and that the monthly payments which Mrs. Christman believed represented her share of the mortgage obligation were in reality rent payments, the presiding Justice's decision indicates that he deemed the Parrottas' account of the transaction unworthy of belief. It is not our task to second-guess that determination.

Given the failure of the appellants to rebut the presumption of undue influence, the Justice was warranted in imposing a constructive trust on a one-half undivided interest in the property for the benefit of the plaintiff; "[S]o long as [defendants] cannot in fact refute the presumption that [their] benefits are tainted by the confidential relation, [they] will not be allowed to retain the benefits derived from the advantage of [their] influence." *Id. Eldridge v. May,* 129 Me. 112, 116, 150 A. 378, 379 (1930).

### IV

"The plaintiff's action was barred by laches."

■ Finally, the defendants invoke the affirmative defense of laches, reasoning that the plaintiff's failure to commence this action until 1971 constitutes "an omission to assert a right for an unreasonable and unexplained length of time . . . under circumstances prejudicial to the adverse party." *A. H. Benoit & Co. v. Johnson,* 160 Me. 201, 207, 202 A.2d 1, 5 (1964); *Stewart v. Grant,* 126 Me. 195, 199–202, 137 A. 63, 66–67 (1927).

We find this argument unpersuasive. Throughout the entire period from 1955 to 1971, the plaintiff acted on the assumption that she was a co-owner of the property. Under the circumstances, such an assumption can hardly be characterized as unreasonable. It cannot be overemphasized, after all, that the Parrottas dominated this entire affair. They allayed Mrs. Christman's doubts as to her status as an owner with the rather disingenuous explanation that G.I. mortgage regulations prohibited multiple ownership, and consistently avoided her inquiries concerning tangible proof of her interest in the property. Until 1971, nonetheless, Mrs. Christman evidently trusted both of the defendants implicitly and completely.

It was not until the summer of 1971, then, when the defendants attempted to have her evicted, that the plaintiff realized that she was mistaken in her basic assumptions. More significantly, not until then did the Parrottas make it clear to Mrs. Christman that they did not regard her as a co-owner of the Newman Street residence. When the defendants thereby revealed their true colors, the plaintiff promptly commenced this suit. There was no unreasonable delay on the part of the plaintiff such as to make laches a valid defense to this action. *A. H. Benoit & Co., Stewart,* supra.

Appeal denied.

All Justices concurring.