**Roland SIROIS**
v.
**TOWN OF FRENCHVILLE.[1]**
Supreme Judicial Court of Maine.
Argued Sept. 21, 1981.
Decided Feb. 12, 1982.

1. The caption reflects our deletion of Valere Tardif, Raoul Paradis and Roger Albert, the three members of the Frenchville Board of Selectmen, as party defendants in this case. The

stantive misnomer the failure to designate the defendant town as the Inhabitants of the Town of Frenchville. *See, Inhabitants of the Town of*

William J. Smith (orally), Van Buren, for plaintiff.

Rudolph T. Pelletier (orally), Madawaska, for defendant.

*Boothbay Harbor v. Russell*, Me., 410 A.2d 554, 557 n.3 (1980).

Before McKUSICK, C. J., GODFREY, NICHOLS, CARTER and WATHEN, JJ., and DUFRESNE, A. R. J.

WATHEN, Justice.

The plaintiff, Roland Sirois appeals from a judgment of the Superior Court (Aroostook County), which granted summary judgment to the defendant Town of Frenchville. Plaintiff's action sought to impose liability upon the defendant municipality on either a contract or an estoppel theory for the Town's failure to purchase, maintain and operate a sewage treatment facility. The Superior Court found that the action was barred by the Statute of Frauds. While we do not concur with that finding, we affirm the judgment on the grounds that the evidence submitted on the motion for summary judgment establishes as a matter of law that the defendant Town is not liable to the plaintiff either by contract or promissory estoppel.

The pleadings, affidavits and deposition submitted in connection with the motion for summary judgment establish the following uncontroverted facts. Early in 1975, plaintiff Roland Sirois owned land in Frenchville, Maine and began to develop the land into the Queens Village Subdivision, a housing development. In the Spring of that year Sirois went to the Farmers Home Administration (FHA) seeking financing for the construction of a sewer system for the development. The FHA informed Sirois that before they would consider financing a private individual, he (Sirois) would have to have an agreement with the Town of Frenchville (Town) whereby the Town would take responsibility for operating and maintaining the sewer system. On May 12, 1975, Clovis Daigle, after discussions with Sirois, and being one of three town selectmen in Frenchville, wrote a letter to Sirois stating that the Board of Selectmen accepted on behalf of the Town the responsibility of "maintaining and operating the proposed sewage treatment facilities." At a meeting of the entire Board of Selectmen, held on May 12, 1975, the Board agreed to accept responsibility on behalf of the Town for "maintaining and operating the subdivision road ...." In June, Sirois spoke to the FHA again and concluded he ought to seek public FHA financing through the Town.

A special town meeting was held on July 2, 1975 at which the citizens of Frenchville approved by voting Article 4 of the agenda. Article 4 read as follows:

"To see if the town will instruct the Selectmen to apply to Farmers Home Administration and to secure loans or issue bonds in connection herewith for $50,-000.00 for funds to meet Federal and State Grants obtained for the construction of Sewer and Sewerage treatment facilities for the Town of Frenchville."

The land on which the sewer system was built was never accepted by the Town or voters even though a deed was given to the Town and recorded. Sirois completed the sewer system for licensing purposes between July and September of 1975; further sewer lines were added in 1976. During that same time, a lawyer and an engineering company paid by Sirois prepared the Town's application to the FHA and Department of Environmental Protection (DEP) for a license. On August 12, 1975, Florence Michaud, Town Manager of Frenchville, wrote a letter to Sirois repeating the statements in Clovis Daigle's letter of May 12, 1975.

The DEP granted the Town a license in September of 1975. The FHA approved the financing in the early part of 1977 and requested that the voters amend their authorization in Article 4 to $35,000.00. At a special town meeting the voters refused to amend Article 4. At the present time, the Town has never operated or maintained the system. In February of 1980, Sirois filed suit against the Town, and in his complaint alleged breach of an agreement by the Town to pay the costs of construction, to operate, and to maintain the sewer system. Pleading in the alternative, Sirois also sought damages on the theory of promissory estoppel. The defendant Town of Frenchville, in their answer to the complaint denied that any contract, agreement or promise ever existed between the Town and Sirois.

After substantial factual development had occurred by way of deposition, admission and affidavit, the defendant moved for summary judgment in its favor. The defendant argued alternatively: first, that there was no contract, second, that any offer or acceptance on the part of the Town was unauthorized and third, assuming that there was a contract, it was barred by the Statute of Frauds. The justice below did not explicitly rule upon the existence of a contract *vel non* nor the issue of authority but rather *assumed* the existence of such a contract and found it to be unenforceable because of non-compliance with the Statute of Frauds. His reasons, though not fully stated, seem to be that as the defendant urged, the agreement was either a contract for the sale of an interest in land or an agreement not to be performed within one year and no sufficient, signed memorandum existed as required by the Statute of Frauds. Upon examining the record on appeal we are satisfied that the Statute of Frauds is inapplicable to the facts of this case. Nonetheless, we affirm the judgment below because we conclude that as a matter of law no contract or agreement existed between Sirois and the Town and that no promise was made by the Town to Sirois upon which to support the plaintiff's promissory estoppel claim.

The plaintiff relies on the following documents and events to evidence the alleged agreement or promise: Clovis Daigle's letter of May 12, 1975; Florence Michaud's letter of August 12, 1975; the minutes of the May 27, 1975 Board of Selectmen meeting; the Town's correspondence with and applications to the FHA and DEP; approval of the project by the Town Planning Board; approval by the voters of Frenchville of Article 4 at the town meeting on July 2, 1975. We find that as a matter of law none of the above documents and events evidences a contract, agreement or promise between the Town and Sirois.

The letter written by Clovis Daigle is insufficient to bind the Town of Frenchville. 30 M.R.S.A. § 2316 (1978) provides in pertinent part:

"It is the intention of this subchapter that the board of selectmen *as a body* shall exercise all administrative and executive powers of the town . . . ." (emphasis added)

This Court has previously held that one member of a board of selectmen cannot bind a town to a contract unless his authority to act alone is proved or his actions subsequently ratified. *See Prest v. Inhabitants of the Town of Farmington*, 116 Me. 8, 11, 99 A. 653 (1917); *Inhabitants of Richmond v. Johnson*, 53 Me. 437, 438 (1866). All persons contracting with town or city officers must take notice at their peril of the extent of the authority of such officers. It is not the town's burden to establish the absence of authority but the plaintiff's burden to prove the authority. *See Van Buren Light & Power Co. v. Inhabitants of Van Buren*, 116 Me. 119, 123, 100 A. 371, 372 (1917). In the context of the present case a material issue of fact must be raised as to authority or ratification if summary judgment is to be avoided. The record is devoid of any suggestion that Daigle was authorized to act alone or that his actions were subsequently ratified. Similarly, the letter written by Florence Michaud had no binding effect on the Town of Frenchville. The powers and duties of a town manager are set forth in 30 M.R.S.A. § 2317 (1978). The legislature has listed in that statute fourteen specific acts which the town manager is authorized to do; absent from that list is the power to contract on behalf of the Town. Although under that statute the town manager is authorized to act as purchasing agent for the Town, her letter of August 12, 1975, does not indicate that she was purchasing for the Town, but rather that she was accepting responsibility for the operation and maintenance of the sewer system.

The minutes of the meeting of the Frenchville Board of Selectmen held on May 27, 1975 do not indicate that the alleged agreement or its terms were ever discussed and consequently, the minutes cannot be said to evidence a contract with the Town or to ratify Clovis Daigle's earlier

action. The minutes of the meeting reveal that the topic of discussion at the meeting was the acceptance of responsibility for operating and maintaining the subdivision roads, not the sewer system or treatment facility.

 The Town's correspondence with and applications to the FHA and DEP do not disclose any contract or agreement between the Town and Sirois. These documents constitute applications, not a contract, agreement or promise. We also reject the argument that because the Town made the applications it impliedly accepted or ratified the alleged contract. At that point in time, no contract existed to be accepted and nothing in the correspondence or applications ratified the actions of Clovis Daigle. In addition approval of the project by the Town Planning Board does not bind a Town to a contract with the party seeking approval.

 Finally, the plaintiff relies on the voters' approval of Article 4 at the Town meeting. The action taken by the voters did not give rise to an agreement or promise by the Town to pay the costs of constructing, operating, and maintaining the sewer system. On the contrary, by the plain meaning of Article 4, the citizens only authorized the Board of Selectmen to seek the initial financing necessary for the sewer system project. This approval, without further or subsequent action by the voters, as a matter of law did not create a contract, or agreement between the Town and Sirois or constitute a promise by the Town to Sirois. Consequently, none of the documents or events upon which the plaintiff relies evidences a contract or agreement with the Town and his cause of action for breach of contract fails for lack of the existence of a contract. Further, plaintiff's cause of action based on promissory estoppel must also fail because one of the elements of such a claim is a promise made by the party being sued, and no such promise by the Town was

made here. *See Chapman v. Bomann*, Me., 381 A.2d 1123, 1127 (1978).

We affirm the grant of summary judgment on the grounds that as a matter of law no contract existed nor is the Town of Frenchville estopped from denying its liability.

The entry is:

Judgment affirmed.

McKUSICK, C. J. and GODFREY, NICHOLS, JJ., and DUFRESNE, A. R. J., concurring.

CARTER, Justice, dissenting.

I respectfully dissent.

The motion justice decided this case below solely on the basis that the Statute of Frauds barred enforcement of any contract that might exist between the plaintiff and the town. The majority determines that conclusion to be error. The majority then goes on to decide the appeal on the basis that the motion papers demonstrate, as a matter of law, *that no contract existed as between the plaintiff and the town*. I do not believe that the motion justice decided that issue.[1] He states as follows in the Order granting the summary judgment:

> After consideration of the pleadings, affidavits and deposition, this Court grants the motion. The promises *sued upon* by Plaintiff are subject to the Statute of Frauds. The writings offered by Plaintiff do not constitute a sufficient memorandum of the *alleged* agreements, and the exceptions to the Statute urged by Plaintiff do not apply.

(Emphasis added.) The full context of the justice's language indicates that he decided only the issue of the applicability and effect of the Statute of Frauds and did not decide, indeed the parties apparently did not argue over, the issue of whether a contract ever came into existence.

---

1. I take it from the language of the majority opinion that the majority agrees with me in this conclusion. The opinion indicates at page 294 that the majority does not take the position

that the motion justice did decide this issue but rather that the motion justice *assumed* the agreement existed and that the Statute of Frauds would bar the action. (At 294.)

That such was the decisional technique of the motion justice is lent further credence by the failure of the justice to specifically find that a contract did exist. Finally, I think it significant that the justice was at pains *not* to find that a contract existed by his references in his Order to "the promises *sued upon*. . . ." and to the "*alleged* agreements." (Emphasis added.) Such language, in my view, can only reflect a deliberate attempt to show that he consciously avoided deciding the issue of whether a contract was in fact formed by the words or acts of the parties.

If the motion justice did not decide the latter issue, we should not *sua sponte* decide the issue *on appeal. In re Estate of Thompson*, Me., 414 A.2d 881, 890 (1980); *Christman v. Parrotta*, Me., 361 A.2d 921, 924 (1976); *see Jones v. Suhre*, Me., 345 A.2d 515 (1975). "Principles of sound appellate practice make us extremely reluctant to grant relief except on the basis of what was argued and decided in the court below." *McNicholas v. York Beach Village Corp.*, Me., 394 A.2d 264, 268 (1978).

Secondly, even assuming that the motion justice's language can be construed to show a decision on his part that a contract was formed, we can properly affirm the decision below only if it is clearly demonstrable that there are no genuine issues of material fact in the case on the basis of the factual assertions set forth in the motion papers

then before him. *Statler Industries, Inc. v. Board of Environmental Protection*, Me., 333 A.2d 703, 704 (1975).

Summary judgment may be ordered "only 'when the facts before the court so conclusively preclude . . . [a party's] recovery that judgment in favor of the other party is the only possible result,'" *Gagne v. Cianbro Corp.*, Me., 431 A.2d 1313, 1319 (1981), *quoting Wallingford v. Butcher*, Me., 413 A.2d 162, 165 (1980), because, on the basis of facts not subject to genuine dispute, the prevailing party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c). As this case is now postured before us, we must determine whether the lower court properly found that there is no genuine issue of material fact and, if so, whether the court's application of law to these facts was correct. *See Karantza v. Salamone*, Me., 435 A.2d 1384 (1981); *Salamone v. City of Portland*, Me., 398 A.2d 49 (1979).

*Beaulieu v. City of Lewiston*, Me., 440 A.2d 334, (1982).

The motion papers consist of the Complaint, Answer, Deposition of Plaintiff, Affidavit of Roland D. Martin with five exhibits thereto, Affidavit of Florence H. Michaud, Counter-Affidavit of plaintiff with attachment and Counter-Affidavit of Clovis Daigle with two attachments.[2] They set out the following salient facts.

2. This case demonstrates again counsel's apparently thoughtless disregard of the docket entry sheet maintained by the clerk. None of the foregoing motion papers are entered on the docket in this case. M.R.Civ.P. 79(a) states specifically:

> All papers filed with the clerk, all appearances, orders, verdicts, and judgments shall be noted chronologically upon the docket and shall be marked with the docket number. These notations shall briefly show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the return showing execution of process.

While it is the clerk's initial responsibility to see that appropriate docket notations are made, it is, I believe, the ultimate responsibility of counsel to consult the docket from time to time and be sure that it is properly maintained. On appeal, the docket sheet can be a critical document and the substantive rights of the parties may be adversely affected by the inadequacy of entries on the docket. Both the record on appeal, M.R.Civ.P. 74(a), and the appendix on appeal, M.R.Civ.P. 74C(a), are required to contain "all docket entries in the proceedings below." This Court relies heavily, in performing its appellate function, upon the docket sheet to determine the procedure followed below. The entries on the docket sheet may often be dispositive in determining if issues were raised below, in what context they were raised and dealt with by the court, the timeliness with which they were raised, if they were disposed of by the Court, and a host of other issues going to appellate standing of the parties and jurisdiction of the court. Wise counsel will look well to the docket entries.

The record contains Requests for Admissions of Fact by the defendant filed, I assume, they are not docketed, and dated on the same date

The plaintiff's Complaint makes the following allegations with respect to the formation of contract issues:

4. On or about May 12, 1975, Plaintiff and Defendant Town of Frenchville, *through its Selectmen*, agreed that Plaintiff would construct a sewer system and sewage treatment plant in Frenchville for the proposed Queen Village Subdivision and that the Town of Frenchville would be responsible for maintaining and operating said system and plant and would pay Plaintiff for his reasonable charges for constructing said system and facility.

5. On July 2, 1975, *the voters of Defendant Town of Frenchville*, at a legal town meeting, approved said agreement and instructed its Selectmen to borrow up to Fifty Thousand Dollars ($50,000.00) for payment of the construction of said system and facility.[3]

(Emphasis added.) The defendant's Answer sets forth affirmative defenses based upon the impact of the legal concepts of the Statute of Frauds, the doctrine of municipal immunity and sovereign immunity, the Statute of Limitations, failure to state a claim upon which relief can be granted, and waiver of estoppel arising from the plaintiff's conduct in proceeding to construct the sewer system and to thereafter operate it. The two pertinent allegations from plaintiff's Complaint, set forth above, are denied and it is asserted as an additional affirmative defense that the contract "is not enforceable against the Defendants because it was never authorized, approved, or ratified by them."

The Answer was followed by a Motion for Summary Judgment made by the defendants pursuant to M.R.Civ.P. 56 asserting

simply "... that there is no genuine issue as to any material fact ... and that Defendants are entitled to such dismissal as a matter of law." The Motion states that it is based on the pleadings, deposition of Roland Sirois, the affidavit of Florence H. Michaud and the affidavit of Roland D. Martin with the five exhibits attached thereto. The attached affidavit of Florence H. Michaud asserts that she served as town manager during the entire year 1975 and until 1980. It further asserts that, *to her knowledge,* plaintiff's attorney, William J. Smith, and plaintiff's engineering firm, HydroResources and Associates, Inc., did not render any services to the municipality, *at the town's request,* and were not paid any money for services rendered in 1975 in respect to the project in question.

The affidavit of Roland D. Martin asserts that he presently serves (as of the date of the execution of the affidavit) as town manager and town clerk of the defendant and attests the authenticity of the five documents attached to the affidavit. The first document attached to Mr. Martin's affidavit is a letter written on the stationery of the "Office of the Selectmen, Assessors and Overseers of the Poor" of the municipality of Frenchville, Maine. The letter is dated May 12, 1975, is addressed to the plaintiff and is in reference to "Subdivision Plans and Waste Treatment Facility, Queen Village Improvement, Inc., Frenchville, Maine 04745." The letter reads as follows:

Dear Mr. Sirois:

The Board of Selectmen has accepted on behalf of the Town of Frenchville the responsibility of maintaining and operating the proposed sewage treatment facilities including the sanitation sewers.

---

(October 16, 1980) as the Motion for Summary Judgment. Plaintiff's Answers to these Requests appear in the record and are docketed on December 3, 1980. The Motion for Summary Judgment does not recite that the Requests and Answers thereto are intended to be part of the basis for the Motion. I cannot determine what consideration, if any, was given to them by the court below. Considering the content of the Answers filed by plaintiff, they would have no impact on my analysis, whether included in, or excluded from, the motion papers.

3. The Complaint also sets out a claim for relief based upon the theory of promissory estoppel under *Chapman v. Bomann,* Me., 381 A.2d 1123, 1127 (1978). I also believe issues of fact exist on the motion papers with respect to that claim. Neither this claim nor any of the issues raised by it were considered by the court below. Accordingly, I do not discuss herein the application of summary judgment to that claim.

Further, the Town of Frenchville will maintain the roads in the proposed subdivision.

/s/ Clovis Daigle
Chairman Board of Selectmen
Frenchville, Maine 04745

The second exhibit to the affidavit is a minute of a meeting of the Board of Selectmen dated May 27, 1975 purporting to be signed by the three members of the Board of Selectmen. The minute reflects that a motion was passed at the meeting ". . . that *the Board of Selectmen* accept on behalf of the Town of Frenchville, the responsibility of maintaining and operating the sub-division road under [certain conditions]." (Emphasis added.) None of the specified conditions is pertinent to a resolution of the issues presently before the Court on this appeal. The third exhibit is a copy of the warrant for and the minutes of the July 2, 1975 meeting of the voters of the town at which the town voted to seek financing for the facility through federal loans and bonds. *See infra* at 300.

The fourth exhibit to the affidavit is a letter on the stationery of HydroResources and Associates, Inc. addressed to Stephen W. Groves, Chief of the Division of Licensing and Enforcement of the Bureau of Water Quality Control. It is in reference to "Application for Sanitary Waste Water Discharge License; Roland Sirois/Town of Frenchville, Frenchville, Maine." The letter states: "enclosed is the complete application in the name of the Town of Frenchville. [E]nclosed is a set of plans for your records." The letter purports to be signed by one J. E. Michaud, President of Hydro-Resources and Associates, Inc. Copies of the letter are reflected to have been sent to Mr. Clovis Daigle, Mrs. Michaud, the town manager, Mr. Sirois, and one Dwight Sewell.

Attached to the letter is a nine-page document entitled "Application for Sanitary Waste Water Discharge License" made out in the name of the Town of Frenchville. That document reflects that the property on which the facility is to be built is owned by the plaintiff. The application then pro-ceeds to set forth certain factual data with respect to the site and proposed facility. It indicates that *the estimated annual operating costs of the proposed facility are $200.* It lists HydroResources and Associates, Inc. as a consulting engineering firm associated with the project. It states that *the Town of Frenchville* applies for a waste discharge license under 38 M.R.S.A. ch. 3, § 414 allowing *it* to discharge into a segment of the St. John River classified as B–2 and located at Frenchville, Maine. *The applicant* (presumably the town) therein agrees to submit for approval all plans and specifications and agrees that no work shall be commenced prior to receipt of such an approval. The document is signed by Clovis Daigle as "applicant" and also in his capacity as "municipal official" indicating his status to be that of "First Selectman". The final exhibit to the motion is a minute of a meeting of the Board of Selectmen dated June 24, 1975 indicating that the Board had reviewed and signed the warrants for a Special Town Meeting to be held on July 2, 1975. The minute is signed by the three Board members.

Two counteraffidavits were filed in the motion proceedings on behalf of the defendant. The first of these is an affidavit by the plaintiff. The factual assertions therein that are pertinent to the issue of contract formation are as follows:

4. I contacted the Selectmen of the Town of Frenchville to see if they would bring before the voters of the Town whether the Town would seek financing for the construction of the facility from FHA.

5. A town meeting was called on July 2, 1975 at which time it was explained to the voters that construction of the facility was by me; that the FHA financing would pay for the construction costs; and that the financing would be paid for by user fees. The voters approved this article.

. . . .

7. In August of 1975, I requested from the Selectmen a letter from the Town of Frenchville evidencing their

agreement to maintain and operate the facility. This was provided to me on August 12, 1975, . . . .

Attached to the plaintiff's affidavit as an exhibit is a letter written on the stationery of the Office of the Selectmen addressed "To Whom It May Concern" in reference to "Mr. Roland Sirois' Subdivision plans and Waste Treatment Facility, and also maintaining and plowing the road." The letter states in part as follows:

The Board of Selectmen has accepted on behalf of the Town of Frenchville the responsibility of maintaining and operating the proposed sewage treatment facilities including the sanitary sewers.

(Emphasis added.) The letter is signed by Florence H. Michaud "Town Manager, Frenchville, Maine." The second counteraffidavit is one made by Clovis Daigle with certain attachments thereto. The affidavit sets forth that Mr. Daigle served as Selectman of the Town of Frenchville from 1963 to March 1977 and that he was Chairman of the Board from 1964 to March of 1977. The pertinent factual assertions contained therein for purposes of the present inquiry are as follows:

3. The Selectman called a Special Town Meeting on July 2, 1975. A copy of the Warrant and Minutes of the meeting concerning the sewage treatment plant and sewer systems is attached hereto as Exhibit A and incorporated herein by reference.

4. At the July 2, 1975 meeting it was explained to the voters concerning Article 4 that construction of the system was by Roland Sirois; that user fees was by the means of paying the financing; and that the financing would be to pay Roland Sirois for the construction cost of the sewer and sewage treatment facility.

5. The Article was carried with approximately 90% of the voters in favor.

6. Hydroresources and Associates rendered engineering services and William J. Smith rendered legal services concerning the Town's application for F.H.A. financing and the D.E.P. licensing of the completed sewer and sewage treatment facili-

ty. These sewers [sic] were at the request of the Town and were paid for by Roland Sirois as part of the construction cost of the facility.

7. In May, 1975, when Roland Sirois was seeking financing independent of the Town, the Selectmen agreed to maintain and operate the proposed sewage treatment facility including the sanitary sewers of the Queen Village Subdivision.

8. In August, 1975, after the voters had approved the construction and financing of the facility, the selectmen reaffirmed their agreement to maintain and operate the sewage treatment facility and sanitary sewers.

9. The construction of this sewer system and sewage treatment facility was a benefit to the Town of Frenchville in that the new residences constructed because of its availability has considerably expanded the tax base of Frenchville resulting in increased tax revenues to the Town. It further benifited [sic] the Town by bringing at least part of the Town in compliance with Federal and State environmental laws regarding sewage disposal.

10. The Town applied to the Department of Environmental Protection for a Waste Discharge License for the facility which was granted to the Town on September 24, 1975. A copy is attached hereto as Exhibit B and incorporated herein by reference.

11. In February, 1977, F.H.A. approved the financing of the sewer system and facility and requested that the Voters of Frenchville amend their authorization for a loan of $35,000.00.

12. A special Town Meeting was called on March 29, 1977 and the article to amend Article 4 of the July 2, 1975 meeting was voted down by the voters.

13. The voters of the Town of Frenchville have never rescinded Article 4 of the July 2, 1975 meeting.

Attached to the affidavit is a document labelled "Special Town Meeting Warrant" signed by the three members of the Board of Selectmen of the municipality noticing a meeting of July 2, 1975. Article 4 of the Warrant reads as follows:

To see if the town will instruct the Selectmen to apply to Farmers Home Administration and to secure loans or issue bonds in connection herewith for $50,-000.00, for funds to meet Federal and State Grants obtained for the construction of Sewer and Sewage treatment facilities for the Town of Frenchville.

Also attached to the affidavit is a document entitled "Minutes of Special Town Meeting Held July 2, 1975." The minutes reflect that Article 4 was approved by the voters. Also attached is a waste discharge license certificate granted by the Department of Environmental Protection to the Town of Frenchville dated September 25, 1975. This license appears to be that sought by the "Application for Sanitary Waste Water Discharge License" attached to the affidavit of Ronald D. Martin.

In general, a three-step analytical process is articulated by the majority opinion: 1) that the motion justice erred as a matter of law in concluding that such a contract as is alleged, if it existed, would be barred of enforcement by the Statute of Frauds, 2) that as postured before the motion justice the case contained no genuine issues of material fact and 3) that the undisputed facts as established by the motion papers compel the conclusion as a matter of law that no contract ever came into existence. This latter proposition is founded principally upon the conclusions that 1) the Board of Selectmen never effectively bound the municipality by any promissory undertaking, 2) that the voters of the town never ratified any attempted promissory undertaking of the Board of Selectmen and 3) that the letter of the town manager "had no binding effect."

These conclusions are founded upon the proposition that it is indisputably shown that Clovis Daigle acted alone and without authorization to legally bind defendant-municipality in his discussions with plaintiff and in signing and delivering the letter of May 12, 1975, purporting to bind the town to an acceptance of "the responsibility of maintaining and operating the proposed sewage treatment facilities including the sanitation sewers."

Whether proper authorization existed for that letter or subsequently came into being by the vote taken by the voters at the Special Town Meeting of July 2, 1981 alone or in combination with other acts of the municipal officials is clearly a question of fact. *Blue Rock Industries v. Raymond International, Inc.*, Me., 325 A.2d 66 (1974). The majority, finding that no factual dispute exists on this issue, proceeds to dispose of the case on the legal proposition that "one member of a board of selectmen cannot bind the town to a contract unless his authority to act alone is proved or his actions subsequently ratified." (At 294.)

I disagree with the proposition that the question of whether Daigle's actions were authorized or ratified is one of no possible dispute on the contents of the motion papers. Further, I believe, the majority has misapplied the principle of law on which it has chosen to rely.

On the issue of Daigle's authority there are factual considerations apparent from the content of the motion papers which cut both ways on the issue of Daigle's authorization. Those competing considerations require resolution. It is important to remember that the non-moving party in a summary judgment context may prevail simply by showing that a genuine dispute *exists* as to a material issue of fact. He need not produce factual data by affidavit or otherwise in the summary judgment proceedings that would entitle him *to prevail* on the issue of fact.

The hearing on the motion is not in any sense a trial or a battle of affidavits. The sole function of the court is to determine whether a genuine issue of fact exists. It cannot decide such an issue no matter how unlikely it seems that the party opposing the motion will prevail at trial.

2 Field, McKusick & Wroth, *Maine Civil Practice*, § 56.4 at 39 (2d ed. 1970). If an issue of fact exists, the non-moving party has a right to have it resolved by jury trial and the motion for summary judgment ought not be used to defeat that right. *Cf.*

*Cox v. English-American Underwriters*, 245 F.2d 330, 332–33 (9th Cir. 1957).

> [I]t may not be too positively insisted, it is not a facile device for the elimination from congested calendars of complex cases that threaten to consume a great deal of trial time. Nor is it an instrument through resort to which, a judge whose practical experience as a trial lawyer persuades him that a suit will surely—or almost surely—turn out in a certain way, may bring it quickly and inexpensively to such an end.

*Yonkers Contracting Co. v. Maine Turnpike Authority*, 24 F.R.D. 205, 226 (D.Me.1958).

In order to determine from the foregoing facts the narrow issue of whether there was a meeting of the minds to a contract by which the defendant agreed to maintain and operate the facility, I perceive it to be necessary to resolve at least five issues of fact which are in dispute on this record. They are:

1. Whether the services of Attorney Smith and of HydroResources in connection with the planning of the facility and the obtaining of a discharge license were provided *at the request* of the municipality.

2. Whether Clovis Daigle by signing the letter of May 12, 1975 indicating his capacity as Chairman of the Board of Selectmen acted alone (*i.e.*, as an individual) *or for the entire Board* in making the commitment on the part of the town there set forth.[4]

3. Whether by the vote of July 2, 1975 at the Special Town Meeting the voters intended to ratify a commitment *by the Board of Selectmen* for the operation and maintenance of the facility by the town.

4. Whether the submission of the application for the discharge license was the authorized act *of the Board of Selectmen*.

5. Whether an intent by the municipality to undertake a commitment to maintain and operate the facility is manifested by the totality of the acts of the municipal officers and the voters under all of the circumstances.

All of these issues go to the resolution of the general issue that lies at the heart of

---

**4.** The majority relies upon two cases for the proposition that "one member of a Board of Selectmen cannot bind the town to a contract unless his authority to act alone is proved or his actions subsequently ratified." (At 294.) The first of these, *Prest v. Inhabitants of Farmington*, 116 Me. 8, 99 A. 653 (1917), I believe to be inapposite authority for the application of the stated rule to the facts of this case. In that case, a member of the Board of Selectmen, "using stationery bearing his personal business letter heads [*sic*]," *id.* at 9, 99 A. at 654, wrote a letter to a third party, not to the party claiming the existence of a contract. The letter was turned over to the plaintiff who offered it in evidence to establish a contract arising out of his reliance upon representations therein to establish terms of his asserted contract with the town. The court specifically noted that "[t]he signature was personal, not official." *Id.* at 10, 99 A. at 654.

The issue there was whether the letter was admissible to prove reliance on its contents to establish certain terms of the contract. The court said that it was not so admissible. The reason given was that even if it had been shown to its author by the plaintiff to indicate his knowledge of a reliance upon its contents in subsequently occurring negotiations with the Board of Selectmen, a possibility about which the court intimated great doubt, "it does not satisfactorily appear that any other member of the board ever saw it, or knew its contents or ratified the statements therein contained." *Id.* at 11, 99 A. at 654.

The court carefully stated the rule of law on which it relied: "[I]t is well established that without subsequent ratification, either by the town *or by the majority of the board of selectmen*, the act of one member of the board cannot bind the town." *Id.* (Emphasis added.) Thus, the case is factually different than the case at bar, holding only on the question of the admissibility of the letter at trial, not upon its legal effect, and finally premises that holding upon a rule of law that recognizes that a quorum of the Board of Selectmen *can* bind the municipality for which they act.

The second authority, *Inhabitants of Richmond v. Johnson*, 53 Me. 437 (1866) simply states that "[t]he contract was signed by but one of the selectmen." *Id.* at 438. The defendant was sued as guarantor of one Gosslin's performance of an alleged contract between the town and Gosslin. The holding of the case is that no contract is shown because the contract document was signed by only one selectmen and not shown to have been ratified *by the Board as a whole* or by the town. *Id.*

the case in its present posture: whether the Board of Selectmen, as an entity, entered into the agreement alleged by the plaintiff to accept, on behalf of the town, responsibility for maintenance and operation of the facility. Since only a single issue of material fact need be shown to defeat a summary judgment, I shall specifically treat in this analysis only the first two of these issues.

With respect to the first, the affidavit of Mrs. Michaud, the town manager, in 1975 and thereafter, asserts that *to her knowledge*, Attorney Smith and HydroResources rendered no services to the town *at the town's request.* Yet, the affidavit of Clovis Daigle, a selectman of the town from 1963 to 1977 and Chairman of the Board of Selectmen for most of that period, asserts in paragraph six that such services were rendered at the request of the town.[5] The letter of HydroResources (exhibit 4 to the affidavit of Mr. Martin) establishes that the company prepared a waste discharge license application *in the name of the town* and submitted it to the appropriate state agency, sending copies of the letter and of the application to town officials. An inference favoring the factual conclusion that this was done "at the request" of the town, appears to me to be logically proper. There may well be other facts that would negative such an inference but, if they exist, they are not even alluded to in the motion papers.

It seems clear to me that a genuine issue of fact is thus created. It is a material fact because if that issue is resolved in favor of the plaintiff, a further inference is logically justified to the effect that a private company would not undertake to prepare and submit such an application "in the name of the Town of Frenchville" without authority *from the town to do so.* A conclusion that HydroResources had such authority is supported by the facts that: 1) the application

is clearly in the name of the town and refers to the town as the owner of the premise on which the facility is to be located, 2) the application is signed by Clovis Daigle as the town's first selectman and 3) that the requested license was ultimately granted to the town. If HydroResources had such authority, the entire circumstances surrounding the application and the license would be evidence tending to support a conclusion that the town had, at the time of the writings, a greater interest in the subject facility than is contended by the town; indeed, it might be sufficient to establish, together with other evidence at trial, that interest to be precisely the one which is claimed by the plaintiff.

On the second issue of the extent of the authority of Clovis Daigle in authorizing the letter of May 12, 1975, there is likewise factual dispute. The letter itself is on the Board's stationary and is not signed in an individual capacity by Daigle but as "Chairman, Board of Selectmen". The text of the letter itself states that *"The Board of Selectmen* has accepted on behalf of the Town of Frenchville..." (emphasis added) the specified responsibility for the facility. Facially, the text of the letter constitutes a representation that the Board, as an entity, has so acted, not that Daigle has by himself undertaken to so bind the town. This fact renders, in my view, the treatment given this issue by the majority, as one of law, inappropriate. The cases of *Prest v. Inhabitants of Farmington,* 116 Me. 8, 99 A. 653 (1917) and *Inhabitants of Richmond v. Johnson,* 53 Me. 437 (1866) (*see supra* n.4) dealt with writings that purported to be *solely* the act of a single Board member. Such is not the case with the Daigle letter. All *indicia* to be gathered from the letter itself indicates that it is a duly authorized act by Daigle on behalf of the Board as an entity. These

---

5. The full paragraph reads as follows:

6. Hydroresources [*sic*] and Associates rendered engineering services and William J. Smith rendered legal services concerning the Town's application for F.H.A. financing and the D.E.P. licensing of the completed sewer and sewage treatment facility. These sewers

were at the request of the Town and were paid for by Roland Sirois as part of the construction cost of the facility.

I take it to be clear that the word "sewers" in the last sentence of that paragraph is a typographical error and should be read "services" in order to state the true intent of the affiant.

*indicia* must be overcome by evidence to the contrary if a contrary conclusion is to be reached. The facial representation of Board action to be gathered from the letter is supported by paragraph seven of Daigle's affidavit.[6] Nothing in the Martin affidavit, *which introduced the Daigle letter into the motion papers*, brings in dispute directly, or by inference, such a conclusion. Further support is given to this conclusion by the fact that on August 12, 1975 Mrs. Michaud, a Town Manager, signed a letter (Exhibit A, to plaintiff's affidavit) under similar circumstances *also* stating that "the Board of Selectmen" had accepted responsibility for the maintenance and operation of the facility. Both the Daigle and Michaud letters say the town will also maintain the roads associated with the subdivision. This is consistent with the minutes of the meeting of the Board of May 27, 1975 showing a vote constituting that very action and justifies an inference of the accuracy of the other contents of the two letters.

The conclusion that the Daigle letter, as supported by the Michaud letters and other factual data in the motion papers and reasonable inferences therefrom, is evidence of a commitment actually undertaken by the Board of Selectmen and intended to be binding on the town, to maintain and operate the facility is not directly refuted or contradicted by any factual data or evidentiary assertion in the motion papers. Thus, it might seem that if summary judgment is in any respect proper, the plaintiff should have had summary judgment entered in his favor on the issue of the existence of such a commitment by the town, especially in light of the voters' later vote to authorize the Board to seek $50,000 in funding for the construction of the facility. *See* M.R.Civ.P. 56(c). However, a number of other disputed factual issues, besides that of whether the town made a commitment as alleged by plaintiff, remain in this case. We cannot judge (nor should we properly attempt to do so) to what extent the resolution of any one or combination of them might counterbalance the impact of the resolution of any other single issue or combination of issues. Any confident analysis is dependent upon further inquiry into the facts, and I submit that such inquiry is properly obtainable only by trial. I would vacate the judgment below.

6. That paragraph reads in its entirety as follows:

7. In May, 1975, when Roland Sirois was seeking financing independent of the Town, the selectmen agreed to maintain and operate the proposed sewage treatment facility including the sanitary sewers of the Queen Village Subdivision.