Emly RUEBSAMEN and Otto Ruebsamen

v.

Dale MADDOCKS.

Supreme Judicial Court of Maine.

June 11, 1975.

David M. Cox, Bangor, for plaintiffs.

Oscar Walker, Bangor, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

Plaintiffs Otto and Emly Ruebsamen, father and daughter, brought an action under 14 M.R.S.A. § 6051(4) against defendant Dale Maddocks, former husband to Emly, for abuse and breach of confidential relations. After trial, the Superior Court (Hancock County) decreed that defendant convey to plaintiffs whatever interest he had in certain real estate owned jointly by the three. Defendant appeals the decision below, and we deny the appeal.

From the facts found by the Superior Court it would appear that sometime before April, 1968 defendant and plaintiff Emly Ruebsamen met, and were engaged to be married. Thereafter, defendant arranged for the purchase of two parcels of real estate in Hancock County, Maine. One parcel was purchased with the funds of plaintiff Emly Ruebsamen, by deed dated April 2, 1968, with title being taken in Emly Ruebsamen's name. The other parcel was purchased with funds furnished by plaintiff Otto Ruebsamen, Emly's father, by deed dated on or about May 10, 1968, with title being taken in defendant's name.

Early in June, 1968 defendant started to build a house on the first parcel purchased. Otto Ruebsamen provided the money which paid for the construction of the house; over the course of time his investment

reached $25,000 to $30,000. Mr. Ruebsamen also paid defendant a sum varying between $100 and $300 as weekly wages while defendant was building the house; Emly Ruebsamen supplied food and clothing for both herself and defendant.

On June 28, 1968, Emly Ruebsamen and Dale Maddocks were married. On April 12, 1969, Emly and Dale conveyed their separate parcels of real estate to a straw, and through the straw the parties created a property comprising both parcels, owned in joint tenancy by Otto, Emly, and Dale. It is this joint tenancy property that is the subject matter of the present case.

Sometime after the marriage, defendant abandoned work on the house. He and his wife separated, and on August 6, 1970 they were divorced. On March 25, 1971 plaintiffs filed their complaint to impress defendant's interest in the joint tenancy with a trust and to compel defendant to convey to plaintiffs all his right and interest in the joint tenancy.

The case was tried to the court without a jury. The Superior Court entered a number of findings of fact which bore upon the relations of the parties and which were incorporated in the conclusions and orders of the court. The court found as fact that the original land purchases and the subsequent merger into a joint tenancy were all part of a single transaction and relationship; that the relationship between plaintiffs and defendant was one of trust and confidence; that the plaintiffs were inexperienced in business affairs and relied on defendant; that defendant alone was familiar with the area and the properties purchased; that defendant set the terms of the initial purchase of the two parcels and actively brought about the purchases using plaintiffs' funds; and that the defendant was the dominant party in the relationship, possessing and exercising the influence which naturally flows from a relation of trust and confidence.

The Superior Court also found as fact that the plaintiffs did not intend the joint tenancy conveyance of April 12, 1969 to endow defendant with an interest in real property as a gift; that the plaintiffs did not intend the joint tenancy conveyance to be consideration to defendant for any services; and that defendant had not carried his burden, as the beneficiary of a confidential relation, to prove in fact the entire fairness and validity of his retention of the benefit.

 The burden of persuasion as to the existence of a confidential relation rests on the party seeking to establish the existence of the relation. See Mallett v. Hall, 129 Me. 148, 154, 150 A. 531, 534 (1930). The relation must be proved by the customary standard of proof in civil cases, a preponderance of the evidence. See Horner v. Flynn, Me., 334 A.2d 194, 197 n. 1 (1975). While we have not detailed or elaborated those portions of the testimony which tend to support the findings of the Superior Court, there was ample evidence before the Superior Court to support the facts it found and entered in its conclusions. In any case, we cannot say its findings here were clearly erroneous. M.R.Civ.P. 52(a). See Iwanosky v. Iwany, Me., 319 A.2d 339, 339–40 (1974). Our task on this appeal is to consider the facts found below, to determine whether the factual findings may be justified and enforced as a matter of law.

 Among our Maine cases, the fullest exposition of the legal nature of confidential relations appears in Eldridge v. May, 129 Me. 112, 150 A. 378 (1930). There, the term "fiduciary or confidential relation," as used in the law relative to undue influence, was given a very broad application. The relation was held to embrace both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. Id. at 116, 150 A. 379. Thus, the relations and duties involved need not be legal but may be moral, social, domestic, or, merely personal. Id. In a legal sense, confiden-

tial relations are deemed to arise whenever two persons have come into such a relation that confidence is necessarily reposed by one and the influence which naturally grows out of that confidence is possessed by the other and this confidence is abused or the influence is exerted to obtain an advantage at the expense of the confiding party. Id.

■■ The salient elements of a confidential relation are the actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation. See G. Bogert, Trusts and Trustees § 482, at 136–38 (2d ed. 1960). That the parties are related by blood or marriage may lead a court to find that a confidential relation exists, where there is evidence as to trusting and where the blood or family relationship is in a close degree so that the imposition of great trust and the letting down of all guards and bars is natural. Id. at 144–45. But mere kinship itself does not establish a confidential relation; often relatives are hostile to each other or deal at arm's length and act independently and so are held not to have been a confidential relation. Id. at 145–49.

Our Maine cases bear out the above precepts, and our views as to confidential relations as a matter of law have never been so rigid as to ignore the subtle by-play of fact. Where the facts are extreme, and aged testators, broken in health and enfeebled in mind, are imposed upon by relatives, nurses, or friends, factual findings of confidential relations will be upheld unless clearly erroneous, and those who illicitly benefit from the confidential relations will be stripped of their gains. See Gerrish v. Chambers, 135 Me. 70, 78, 189 A. 187, 191 (1937); Eldridge, supra, 129 Me. at 122, 150 A. at 382. In Small v. Nelson, 137 Me. 178, 180, 182, 16 A.2d 473, 475–76 (1940), the jury found a confidential relation between an enfeebled, opiated 90-year old · man and his cousin, but determined that some gifts to the younger cousin were

free from the taint of the relationship, and others were· not, and this Court would not say that the factfinder was clearly erroneous. Id. at 182, 16 A.2d at 476.

■■ On the other hand, a general allegation of a confidential relation is not a sufficient basis for establishing the existence of one. Clappison v. Foley, 148 Me. 492, 497, 96 A.2d 325, 327 (1953). The facts constituting the alleged relationship must be set forth with sufficient particularity to enable the court to determine whether, if true, such facts create a fiduciary or confidential relationship. Id. at 497, 96 A.2d at 327. An allegation of one party's inexperience or trust will not by itself warrant an adjudication of a confidential relation without a statement of the facts indicating the actual placing of confidence and trust, and the abuse of the relation.

■ But even where specific facts tend to show intimate dealings, as between family members or friends, the existence of a confidential relationship remains a question of fact and need not be imposed by law. If the parties to a transaction are of mature years and in full possession of their faculties, their continuing lifelong relation as sisters-in-law and friends will not give rise to a confidential relation as a matter of law unless there is evidence of superior intellect or will on the part of the one or the other, or of trust reposed or confidence abused. See Mallett, supra, 129 Me. at 155, 150 A. at 534–35. Neither will the mere legal relation of life tenant to remainderman establish a confidential relation; a confidential relation must be established in fact. Id. at 154, 150 A. at 534.

■ While the facts in the instant case might be susceptible of more than one interpretation, our review of the Maine law persuades us that the confidential relation found as fact by the Superior Court is permissible within the definition of "confidential relation". We are satisfied that plaintiffs Otto and Emly Ruebsamen reposed

actual trust and confidence in the judgment and abilities of the defendant. They relied on his business experience in allowing him to procure real estate for them and in paying for the real estate defendant selected. Plaintiffs apparently believed that the land combination urged by defendant presaged a profitable speculation in the Maine wilderness. To that end, plaintiffs advanced substantial funds and services to aid defendant and to further, as they thought, the family cause.

We cannot overthrow the findings of the trial court simply because the parties were mature individuals in full possession of their faculties. Confidential relations can, and do, exist between such people. When we consider the family setting, it is only natural that the father-in-law should contribute to such a hopeful enterprise as marriage, and to the future prosperity and happiness of all within the domestic circle. The family relations of father-in-law and son-in-law here augment the confidential relations of the parties in business dealings and sustain the legal consequences that arise from defendant's benefiting from the confidential relations. See Wood v. White, 123 Me. 139, 143, 122 A. 177, 179 (1923). Given proper findings of plaintiffs' inexperience, defendant's larger acquaintance with business affairs, and defendant's consequent influence and superiority, a finding of confidential relations on this record is tenable as a matter of law. See Tribou v. Tribou, 96 Me. 305, 308, 52 A. 795, 796 (1902).

We have previously remarked that our Maine cases give the term "confidential relation" a broad scope. We think it is no departure from a sound construction of confidential relations to find those relations in human dealings which are informal rather than technical, or moral, social, domestic, or personal rather than purely legal. *Eldridge,* supra, 129 Me. at 116, 150 A. at 379. Thus, our cases have uniformly extended to those parties who establish confidential relations the same legal duties and benefits which characterize a fiduciary relation. We are mindful that not all jurisdictions endorse this view. At least one distinguished commentator forcefully urges that fiduciary relations should be meaningfully distinguished from confidential relations both as to their legal nature and duties and as to their procedural consequences. 1 A. Scott § 2.5, at 39–42 (3d ed. 1967). Other commentators allow for a more or less synonymous usage of the terms. G. Bogert, supra, § 482, at 132–33 (2d ed. 1964). The present case presents no occasion for varying the settled rule in Maine that fiduciary and confidential relations give rise to the same legal duties and benefits and entail the same procedural consequences. This Court has practically always spoken of "fiduciary or confidential relations" in one breath, as legal equivalents. *Clappison,* supra, 148 Me. at 497, 96 A.2d at 327; *Small,* supra, 137 Me. at 182, 16 A.2d at 475; *Gerrish,* supra, 135 Me. at 74, 189 A. at 189; *Eldridge,* supra, 129 Me. at 116, 150 A. at 379; *Wood,* supra, 123 Me. at 142–43, 122 A. at 179.

The legal equivalency of confidential and fiduciary relations entails definite procedural consequences. The rule is concisely stated in *Eldridge,* supra, 129 Me. at 116, 150 A. at 379:

[W]henever a fiduciary or confidential relation exists between the parties to a deed, gift, contract, or the like, the law implies a condition of superiority held by one of the parties over the other, so that in every transaction between them, by which the superior party obtains a possible benefit, equity raises a presumption of undue influence and casts upon that party the burden . . . to show affirmatively . . . entire fairness on his part and freedom of the other from undue influence.

Accord, *Gerrish,* supra, 135 Me. at 74, 189 A. at 189 (as to gift). Thus, the burden of going forward shifts to the beneficiary of the confidential relation upon the in-

jured party's showing the existence of the confidential relation and the superior party's receipt of a benefit flowing from the relation. The mandatory effect of the presumption of undue influence will require a finding for the injured party unless the beneficiary of the relation comes forward with evidence tending to affirmatively show entire fairness on his part and freedom of the other from undue influence. The presumption will persist until the contrary evidence persuades the factfinder that the balance of probabilities is in equilibrium or, stated otherwise, until the evidence satisfies the factfinder that "it is as probable that the presumed fact does not exist as that it does exist." Hinds v. John Hancock Ins. Co., 155 Me. 349, 364, 155 A.2d 721, 730 (1959). But if the factfinder is persuaded that the probabilities as to undue influence are in equilibrium, the mandatory effect of the presumption will disappear. Thereafter the issue will be whether the injured party has carried the burden of persuasion, as to undue influence, upon the whole evidence of the case without the aid of the presumption. See Levasseur v. Field, Me., 332 A.2d 765, 768–79 (1975).

The Superior Court found that the defendant presented no evidence, credible or otherwise, which tended to show the fairness of the transactions by which the defendant acquired an undivided one-third interest in valuable real estate and improvements. We cannot say the Superior Court was clearly erroneous in its finding. The law is not offended if a party succumbs to the legal force of an unrefuted presumption, as does defendant here. We can only say that the testimony elicited on defendant's behalf does not suffice to nullify the presumption as a matter of law.

■ Defendant mainly argues that even on the facts found by the Superior Court, plaintiffs intelligently and meaningfully consented to defendant's receipt and retention of an interest in the joint tenancy property. Defendant maintains that

formation of the joint tenancy is a solemn formality by which plaintiffs ratified and endorsed their previous relations with defendant. But wherever a ratification would itself be subject to the same objections and disabilities as the original act, a transaction cannot be confirmed and made binding; for ratification assumes some positive, distinct action or language, which taken together with the original transaction, amounts to a valid and binding agreement. 3 J. Pomeroy, Equity Jurisprudence § 964, at 860 (5th ed. 1941). Thus, when the alleged ratification is simply a continuation of the former transaction, no act of ratification, however formal, is effectual. Id. at 861–62. Here, the Superior Court found as fact that the purchase and eventual merger of the Maddocks and Ruebsamen lands were part of the same transaction and flowed from the same relations of confidence between the plaintiffs and defendant. We cannot impeach that finding of fact simply because a legal instrument such as a joint tenancy deed was used to accomplish the transaction. So long as defendant cannot in fact refute the presumption that his benefits are tainted by the confidential relation, he will not be allowed to retain the benefits derived from the advantage of his influence. See *Eldridge,* supra, 112 Me. at 116, 150 A. at 379. This principle extends to every case in which a confidential relation exists as a fact, in which there is a confidence reposed on one side and a resulting superiority of influence on the other. Id.

■ Plaintiffs' action sounded in equity and sought to impress a constructive trust on defendant's interest in the joint tenancy. The Superior Court impressed the trust, ordering the defendant to release to plaintiffs by proper deed any and all interest in the joint tenancy property. The constructive trust remedy is well-founded in this case. Abuse of confidential relations gives rise to a constructive trust in order that equity may lay its hand on the very thing and wrest it from the possession

of the wrongdoer. See Sacre v. Sacre, 143 Me. 80, 94–96, 55 A.2d 592, 600 (1947). Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises. Restatement of Restitution § 160 (1937). There is no doubt that the facts properly found by the Superior Court, and the law of confidential relations applied to those facts, compel the conclusion that for defendant to retain his interest in the joint tenancy property would be an unjust enrichment alien to the high principles of equity. The legal elements of a confidential relation have been proved. It is not material to this case whether defendant actually broke a promise or breached an agreement. In Sinclair v. Purdy, 235 N.Y. 245, 139 N. E. 255, 258 (1923), Judge Cardozo said: "It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, that puts the court in motion." We concur.

The entry must be:

Appeal denied.

Judgment in accordance with the order and decree of the Superior Court.

All Justices concurring.