**DEPOSITORS TRUST COMPANY**

v.

**Marion N. BLANCHARD.**

Supreme Judicial Court of Maine.

Aug. 24, 1977.

---

Sanborn, Moreshead, Schade & Dawson by Richard B. Sanborn, Augusta, for plaintiff.

Dunleavy & Sandler by John R. Sandler, Presque Isle, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, DELAHANTY and GODFREY, JJ.

POMEROY, Justice.

The administrator c. t. a. of an estate is attempting to recover funds obtained by appellant by an intervivos transfer from the decedent, Myra Noble. After a jury-waived trial, the court found that a confidential relationship existed between Miss Noble and the appellant and that undue influence had been exerted. A judgment was entered against appellant. From such judgment this appeal was taken.

We deny the appeal.

On appeal, Mrs. Blanchard asserts that neither a confidential relationship existed nor was any undue influence exerted. Finally, she argues that the court committed reversible error by refusing to allow her to test the appellee's expert witness during cross-examination.

Myra Noble, the decedent, was an elderly maiden lady who had been living for some years in California. In April 1970 she returned to Maine to retire. Shortly before coming to Maine, she suffered a hip fracture which made her unable to care for herself. Apparently, her physical condition deteriorated during the remaining two years of her life. As her physical condition deteriorated, so also did her mental condition. At one point, while she was hospitalized at the Aroostook County Mental Health Center, a diagnosis of senile dementia was made. Because of the condition of her hip, she continued to experience difficulty in moving around, which, combined with glaucoma and hypertension, rendered her practically helpless.

After an initial stay in the hospital upon her arrival in Maine, she resided with her sister, the appellant, for several months. During this period she was frequently hospitalized. The appellant assisted her sister with her business activities; arranged for

the purchase and renovation of a house for her use; secured a housekeeper; did all her shopping; and made arrangements for her medical treatment.

On December 16, 1971, Miss Noble gave appellant a power of attorney.

Shortly after this, Miss Noble was admitted to the Aroostook County Mental Health Center for psychiatric observation. Upon her release from the center, Miss Noble moved into her own residence with a housekeeper. The appellant continued to handle her sister's business affairs. She testified that she would complete the body of a check, explaining what the check was for, and Miss Noble would sign it.

Even though appellant assumed the responsibility of preparing the checks for Miss Noble to sign to pay for Miss Noble's expenses, she did not submit a bill for services to her sister. However, in June 1971, before appellant began to handle Miss Noble's financial matters, she did receive a sum of money which was at least partial payment for her services.

During the fall of 1971 Miss Noble had her cash assets transferred from California to a Maine bank. In April 1972 the appellant, allegedly under the direction of Miss Noble, arranged for the deposit and distribution of these funds which totaled approximately $130,000. The distribution was in keeping with a document allegedly executed by Miss Noble.

As a result of these transactions, two accounts pertinent to this case were established. A $20,000 account was established by the appellant in her own name, and a $40,000 joint account between appellant and Miss Noble was opened. At the time of Miss Noble's death, $5,000 remained in the joint bank account, and the $20,000 remained in the account in Mrs. Blanchard's name. It is this $25,000 which the appellee claims as funds which should have come into its hands as administrator c. t. a. Mrs. Blanchard's claim was and is that the $25,-000 constituted an intervivos gift to her.

This is the factual background with which we approach the claims of error.

A confidential relationship exists when there is an "actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation." *Ruebsamen v. Maddocks*, Me., 340 A.2d 31, 35 (1975). The facts which support such a conclusion must be established by a preponderance of the evidence. *Id.* The mere fact of kinship, standing alone, does not require the conclusion that a confidential relationship existed. *E. g., Christman v. Parrotta*, Me., 361 A.2d 921, 925 (1976).

The presiding justice made detailed findings of fact. He found, inter alia, that the decedent was in a poor physical and mental condition; that she was incapable of handling her own business affairs; that a formal and valid power of attorney had been executed; and that appellant controlled the decedent's daily life almost completely. These factors support the conclusion that the decedent placed significant trust in the appellant. While it is true that the decedent signed almost all of the checks, because of her failing eyesight she relied on appellant's representations as to the purpose and amount of the payment.

In reviewing the conclusions reached by the presiding justice, we apply the clearly erroneous standard. M.R.Civ.P., 52(a). We cannot say that the justice was clearly wrong in finding that the decedent placed great trust in appellant and had let down all guards and barriers in her relationship with the appellant.

Given the existence of a confidential relationship, appellant owed the decedent a duty to exert no undue influence so as to abuse the trust and confidence which had been gained. A fiduciary's acts are evaluated with a strict eye for entire fairness. It is a very high duty to which the fiduciary is held. *Christman v. Parrotta*, supra.

The evidence reveals several factors which call the appellant's actions into question. A handwriting expert testified that the document which instructed appellant to disburse the decedent's cash assets was not

signed by the same person who had signed other documents.[1] The decedent had executed a will several years earlier in which she bequeathed only $2,000 to her sister, the appellant, and the remainder was to be equally divided between her two brothers and the children of a deceased brother.

The court found as a matter of fact that the April 1972 transfer of funds to the appellant was not compensation for services rendered. Similarly, the court found that Miss Noble was not predisposed to make such a generous gift to the appellant. Finally, the court found that the appellant was not acting in the decedent's best interests, but rather her own, when she effectuated the transfer of funds into her own account.

Findings of fact by the court will be sustained unless clearly erroneous. M.R. Civ.P., 52(a). We find support in the evidence for the conclusions reached by the presiding justice and cannot, as a matter of law, say they are clearly wrong.

■ The third issue raised by appellant challenges the court's refusal to allow appellant to "test" the handwriting expert on cross-examination. In an attempt to discredit the expert's testimony, appellant had prepared a sheet of paper which contained several signatures which purported to be the signature of Myra A. Noble, the decedent. In fact, all but two of the signatures were unskilled forgeries and two were genuine signatures. The purpose of the experiment was to determine whether the expert could identify the two genuine signatures.

■ The trial court is vested with significant discretion in determining the scope of cross-examination.

"The limits of proper cross-examination are within the sound discretion of the presiding Justice and on review we look only to see whether or not there was any abuse of that discretion."

*International Paper Co. v. State*, Me., 248 A.2d 749, 753 (1968). *State v. Gervais*, Me., 317 A.2d 796 (1974).

■ It is well accepted that the decision to allow an in-court experiment rests well within the presiding justice's discretion. *See Otte v. Taylor*, 180 Neb. 795, 146 N.W.2d 78 (1966); *State v. Leopold*, 110 Conn. 55, 147 A. 118 (1929); *cf. Williams v. Williams*, 109 Me. 537, 85 A. 43 (1912). "[T]he trial judge is viewed as in the best position to judge whether the game is worth the candle." McCormick, *Law of Evidence,* § 215 at 536 (1972). It is for this reason that the allowance or denial of an in-court experiment is committed to the discretion of the presiding justice.

The task of examining 20 signatures is of significant magnitude. The expert witness had testified that it took him over nine hours to compare the three signatures he testified about when questioned by the appellee. To be fair to the witness, the court would have had to allow him sufficient time to examine the exhibit. We cannot say the presiding justice abused his discretion in refusing the appellant the opportunity to pursue this tactic.

Accordingly, the entry must be:

Appeal denied.

All Justices concurring.

---

1. The genuineness of the signature as that of Myra A. Noble on the comparison documents is not disputed.