**Albert G. LALIBERTE**

**v.**

**Roger MEAD.**

Supreme Judicial Court of Maine.

Argued June 15, 1993.
Decided July 29, 1993.

Mary Lou Ciolfi (orally), Loyd, Bumgardner & Ciolfi, Brunswick, for plaintiff.

Robert C. Perkins (orally), Camden, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

Defendant Roger Mead appeals from a judgment entered on a jury verdict in the Superior Court (Sagadahoc County, *Bradford, J.*) awarding Albert Laliberte, the guardian and conservator of Virginia Charpentier, compensatory and punitive damages on his claim for the breach of a fiduciary duty. Mead contends that the court's instructions to the jury on the plaintiff's burden of proof constituted obvious error. Because we conclude that the court's erroneous punitive damages instruction affected Mead's substantial rights, we vacate that part of the judgment awarding punitive damages. In all other respects, we affirm the judgment.

In 1976 Virginia Charpentier, a recently widowed elderly lady who had been partially paralyzed throughout her life, met Alice Jewell who had volunteered to assist her in purchasing groceries and running errands that Charpentier was unable to do without assistance. Charpentier was at the time a very intelligent person who was able to carry on interesting conversations. In the early 1980s, however, her physical and mental condition began to deteriorate. By 1986 she was easily confused, unable to recall recent events, and frequently repeated the same stories about her childhood.

In 1980 Roger Mead began to do work around Charpentier's home. By 1984 he had taken over the grocery shopping and errands for Charpentier and was authorized to draw on her bank accounts. In June 1987 Kelly and Sophie Baker moved next door to Charpentier. They immediately befriended Charpentier and visited her several times each week, taking meals to her when possible.

Prior to the Labor Day weekend in 1988 Sophie Baker was told by visiting nurses that Charpentier was going to be left alone for a number of days. Sophie alerted the Jewells to this fact, and they all agreed to assist in caring for Charpentier during the long weekend. The neighbors, who had never spent a significant period of time in Charpentier's home, soon realized the serious deficiency in her care and the hazardous circumstances in which Mead had left her. They then contacted Albert Laliberte, Charpentier's nephew, who made arrangements to come to Maine. Soon thereafter, Laliberte was appointed as Charpentier's guardian and conservator by the Sagadahoc County Probate Court.

Laliberte, in his capacity as guardian and conservator, commenced this action against Mead in a complaint stating claims for the breach of a fiduciary duty and conversion. The jury returned a verdict in favor of Laliberte on his claim for the breach of a fiduciary duty, and in favor of Mead on the conversion claim. The jury awarded Laliberte $77,801.70 in compensatory damages and $100,000 in punitive damages. The court entered judgment accordingly. Mead filed this timely appeal.

I.

■ As an initial matter, we note that Mead failed to object to any of the court's instructions at trial. *See* M.R.Civ.P. 51(b) ("No party may assign as error the giving ... [of] an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."). As such, our review is limited to whether Mead's substantial rights have been violated. *See Hixon v. Mathieu,* 377 A.2d 112, 113–14

(Me.1977); *Smith v. Tonge*, 377 A.2d 109, 111 (Me.1977); M.R.Civ.P. 61.

■ The party alleging undue influence generally has the burden of proving its existence by clear and convincing evidence. *See Dolloff v. Dolloff*, 593 A.2d 1044, 1045 (Me.1991). When, however, a fiduciary or confidential relationship has been shown to exist between the parties to a transaction,

> "the law implies a condition of superiority held by one of the parties over the other, so that in every transaction between them, by which the superior party obtains a possible benefit, equity raises a presumption of undue influence and casts upon that party the burden ... to show affirmatively ... entire fairness on his part and freedom of the other from undue influence."

*Ruebsamen v. Maddocks*, 340 A.2d 31, 36 (Me.1975) (quoting *Eldridge v. May*, 129 Me. 112, 116, 150 A. 378, 379 (1930)). *See also Rosenthal v. Rosenthal*, 543 A.2d 348, 351 (Me.1988). " 'The salient elements of a confidential relation are the actual placing of trust or confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation.' " *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 605 A.2d 609, 614 (Me.1992) (quoting *Ruebsamen*, 340 A.2d at 35). Mead contends that the court erred in instructing the jury that the underlying factual basis giving rise to the presumption of undue influence, i.e., the existence of a confidential relationship and the transfer of assets to the superior party, must be established by a preponderance of the evidence rather than by clear and convincing evidence.

■ We need not, however, determine the standard of proof by which a plaintiff must establish the facts giving rise to the application of the presumption of undue influence.[1] Even if we assume that the court erred in instructing the jury that

Laliberte had the burden of proving the underlying factual basis for the presumption of undue influence by a preponderance of the evidence rather than by clear and convincing evidence, such error did not affect Mead's substantial rights. Charpentier was an elderly and handicapped widow who was losing her mental faculties and who depended on Mead. Mead had control over her finances, and the evidence reveals a number of transfers, in the form of personal checks, from Charpentier to Mead. Indeed, Mead testified to a very close relationship with Charpentier, and to transfers of money from her totalling $45,000. On this record a properly instructed jury would be compelled to find, to a high probability, that Laliberte had established both the existence of a confidential relationship between Mead and Charpentier and the transfer of assets from Charpentier to Mead. *See Levine v. Reynolds*, 143 Me. 15, 19, 54 A.2d 514, 517 (1947).

## II.

■ Under Maine law punitive damages will be awarded only when the plaintiff demonstrates by clear and convincing evidence that the defendant acted with express or implied malice. *See Firth v. City of Rockland*, 580 A.2d 694, 697 (Me.1990); *Tuttle v. Raymond*, 494 A.2d 1353, 1363–64 (Me.1985). Mead contends that the court's instruction on punitive damages was erroneous in that it did not adequately define clear and convincing evidence. We agree. In its instruction, the court explained clear and convincing evidence by defining preponderance of the evidence and beyond a reasonable doubt and then describing clear and convincing as "halfway between the two." That instruction is not even remotely suggestive of our definition of clear and convincing evidence as evidence that " 'place[s] in the ultimate factfinder an abiding conviction that the truth of [the] factual contentions are "highly

---

1. We have held that the existence of a confidential relationship must be established by a preponderance of the evidence. *See Depositors Trust Co. v. Blanchard*, 377 A.2d 101, 103 (Me. 1977); *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me.1975). In view of our disposition of this case, however, we decline Mead's invitation to examine the continuing validity of these holdings in light of our holding in *Taylor v. Commissioner of Mental Health & Mental Retardation*, 481 A.2d 139, 154 (Me.1984) (overruling *Horner v. Flynn*, 334 A.2d 194 (Me.1975)).

probable." ' " *McCracken v. McCracken,* 617 A.2d 1034, 1035 n. 3 (Me.1992) (quoting *Taylor v. Commissioner of Mental Health & Mental Retardation,* 481 A.2d 139, 153 (Me.1984)). Because the court's definition of clear and convincing was meaningless to the jury, we conclude that Mead's substantial rights were adversely affected.

After a careful review of the record, we reject Mead's contention that the conduct of the trial court denied him a fair trial. Moreover, we conclude that the court's instruction with respect to Mead's status as a *pro se* litigant does not constitute obvious error.

The entry is:

Judgment affirmed in part and vacated in part.

Remanded for further proceedings consistent with the opinion herein.

All concurring.