Robert L. DesMARAIS, et al.

v.

David DESJARDINS, et al.

Supreme Judicial Court of Maine.

Argued May 17, 1995.
Decided Aug. 7, 1995.

E. Stephen Murray (orally), Murray, Plumb & Murray, Portland, for the plaintiffs.

John Graustein, Barbara A. Appleby (orally), Drummond, Woodsum & MacMahon, Portland, for the defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Robert L. DesMarais, Elaine Taylor, and Robert N. DesMarais appeal (1) from the judgment entered in the Superior Court (York County, *Saufley, J.*) in favor of the defendants, David and Marie Desjardins, following a nonjury trial on the plaintiffs' claim for tortious interference with the expectation of a legacy; (2) from the order entered in the Superior Court (*Cole, J.*) ordering a nonjury trial on the tortious interference count; (3)

from a summary judgment (*Brodrick, J.*) in favor of the Desjardins on the counts of the complaint alleging duress, undue influence, and unjust enrichment; and (4) from the denial of the plaintiffs' motion to amend their complaint to add a count of breach of fiduciary duty or confidential relationship. Finding no error or abuse of discretion, we affirm the judgment.

The controversy in this case concerns "Saltaire," a beach-front property located in Wells that was conveyed by Louise DesMarais to herself and the Desjardins as joint tenants in 1984. Saltaire was built in the early 1900s by Louise's parents, and owned by Louise since 1940, when she bought it from her mother. Louise used the property as a summer home until she retired in the early 1970s, after which she lived there year-round.

The disposition of Saltaire was of great concern to Louise.[1] At times, she indicated she wanted to keep it in the family, and although the family generally assumed that the house would be left to someone in the family, Louise never informed them that she would leave the house to any particular one of them.

In 1980, Louise executed a will that gave Elaine, her niece, an option to purchase the house for $75,000. If Elaine was unable to buy the property, the option was given to Lionel, Louise's brother. Money from the sale of the house was to be placed in trust for the education of the children of her nephew, Robert N., with the corpus later distributed to those children. Louise subsequently became dissatisfied with the will, and saw other attorneys, but made no new will. She also began to complain about her family's lack of attention to her.

Louise first met the Desjardins in 1977 when she hired David to do some repairs on

[1]. Louise never married or had children of her own but she was interested in and maintained contact with many members of the DesMarais family. Louise had five brothers: Fred, Lionel, Napoleon, Andre, and Adrien. Andre was one of the plaintiffs, but has not appealed from the dismissal of his claim. The other plaintiffs are Lionel's son, Robert N., and his son, Robert L.,

and Elaine Taylor, Adrien's daughter. Taylor is a plaintiff in her capacity as the personal representative of Louise's estate. Robert L. is also litigating on behalf of Taylor and Janice Fallon, another of Robert N.'s children. Both women, beneficiaries under Louise's 1984 will, assigned any potential claims they had to Robert L.

Saltaire. Over the years, in addition to doing more repair work for Louise, he and his wife regularly assisted Louise in other ways as well, such as helping her with grocery shopping, shoveling snow, and giving her rides to church. Louise also spent some holidays with the Desjardins and their family. After Louise broke her hip in 1983, she became increasingly reliant on David and Marie.[2] They brought meals to her twice a week and took her to church regularly. Marie testified that their increased attention occurred because they were informed that Louise might not be eating properly by the doctor who treated Louise after she fainted in church.

Around the same time period, the Desjardins learned that Louise was thinking about leaving Saltaire to them. They tried to discourage her but Louise wanted the Desjardins to have the house because they "were the ones who cared for her, and cared about the house." In December 1983, Louise asked David if he knew of a lawyer. He suggested David Emmons, an attorney who had done deed work for him and had prepared wills for Marie and himself. The Desjardins did not suggest that Louise consult a different lawyer or speak with her family about what she intended to do.

Louise met three times with Emmons in January and February 1984. The Desjardins accompanied her to the meetings and were present for at least some of the discussions. Louise brought notes indicating her wishes and gave these notes to Emmons, who thought she "knew what she was talking about." It was Emmons's suggestion that she convey the property to the Desjardins rather than leaving it to them in her will. Other than talking to her and explaining the basic operation of the deed, Emmons did not

independently investigate whether Louise was competent or acting of her own volition. Emmons prepared a will, power of attorney, and deed for Louise. The deed, signed on February 21, 1984, transferred the property in joint tenancy to herself and the Desjardins. They did not pay Louise anything for the property. The new will left the residue of her estate to Elaine and to Robert L. and Janice, Robert N.'s children. Louise did not want her family to know what she had done so they were not informed.

In April 1985, the Desjardins engaged Bernadette Pope to help take care of Louise. Pope cooked meals for her, took her on walks and drives, and did light housework. Pope kept a daily journal of their activities and conversations. Contained in the notes are a number of Louise's statements indicating her displeasure with her family. The notes do not contain any statements indicating that Louise was unhappy about having conveyed the house to the Desjardins.

In July 1985, after learning of the deed, Robert N. took Louise to Dr. James Gilroy, her physician since 1983, to get a report on her mental condition. Gilroy concluded that Louise had senile dementia,[3] although he testified that Louise was oriented to person, location, her age, and where she was. She also understood his explanation about why she was at his office; her reaction to this was, "Tell Bob [Robert N.] it's none of his business."

Most of the testimony about Louise's mental condition prior to February 1984 described her as forgetful.[4] There was testimony from family members that Louise got more confused following her hip injury, and that her mental condition in early 1984 had deteriorated from the previous year. The first time Gilroy noted any significant mental

---

2. Other than Elaine, who stayed with Louise for a period following the broken hip, none of Louise's other relatives provided any assistance to her.

3. Some of the symptoms of senile dementia are forgetfulness, little recollection of previously asked questions, and impairment of judgment. A

person with senile dementia is more subject to influence than the same person without it.

4. Case notes made by visiting nurses in 1983 and early 1984 included the terms "senility" and "disorientation" to describe Louise's condition. At the trial, the nurses defined both words, as they had used them, to mean forgetful.

limitations was during a hospital stay in September 1984. He testified that these limitations were not present in January 1983 but could have been present in January 1984.

In 1987, Robert N. petitioned the Probate Court for the appointment of Andre as Louise's guardian and conservator, but withdrew his petition after the Desjardins objected and Marie submitted her own petition. Marie was appointed Louise's guardian and conservator on August 27, 1987. On September 8, 1987, after being hospitalized, Louise was discharged to the Kennebunk Nursing Home.[5] She died in February 1988 at the age of 93. The 1984 will was admitted to probate without challenge.

The plaintiffs filed a complaint, later amended, in July 1989. In August 1992, the Superior Court (*Brodrick, J.*) granted the Desjardins' motion for a summary judgment on all counts except the count alleging tortious interference with the expectation of a legacy. In September 1992, the court (*Cole, J.*) granted the Desjardins' motion to strike the plaintiffs' demand for a jury trial. On September 20, 1993, one day prior to the start of the trial, the plaintiffs filed a motion to amend the complaint by adding a count for breach of a fiduciary duty or confidential relationship. Following the nonjury trial, a judgment was entered for the Desjardins. The court also denied the plaintiffs' motion to amend the complaint. This appeal followed.

## I.

■ Maine recognizes the tort of wrongful interference with an expected legacy or gift under a will. *Cyr v. Cote*, 396 A.2d 1013, 1018 (Me.1979). The essence of such a claim is that "but for the tortious interference of another, [the plaintiff] would in all likelihood have received a gift or a specific profit from a transaction." *Harmon v. Harmon*, 404 A.2d 1020, 1024 (Me.1979). There is no dispute as to the death of the ancestor or testator, the first element of the cause of action. The court also found that the plaintiffs established the second element, an expectancy of a benefit from Louise.[6] The plaintiffs contend they made the necessary showing of undue influence required to prove the third element, the defendants' interference with the expectancy by means of fraud[7] or undue influence. *See DiPietro v. Casco N. Bank*, 490 A.2d 215, 219 (Me.1985) (fraud or intimidation required elements of tort of interference with an expectancy); *see also L.L. Bean, Inc. v. Drake Publishing, Inc.*, 625 F.Supp. 1531, 1538 (D.Me.1986) (summary judgment on count alleging interference with business advantage proper when plaintiff did not allege fraud or intimidation), *rev'd on other grounds*, 811 F.2d 26 (1st Cir.), *cert. denied*, 483 U.S. 1013, 107 S.Ct. 3254, 97 L.Ed.2d 753 (1987).

■ Undue influence is the "unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation[ship] between them is justified in assuming that that person will not act in a manner inconsistent with his welfare." *Russo v. Miller*, 559 A.2d 354, 358 (Me.1989) (quoting *Restatement (Second) of Contracts* § 177 (1981)). The burden of proving undue influence generally

---

5. Louise did not wish to be placed in a nursing home. Whether Louise conveyed the property to the Desjardins because they had promised that they would never place her in a home was the issue underlying the counts for breach of contract and unjust enrichment. There was conflicting testimony regarding whether the Desjardins had ever made such a promise to Louise. The Desjardins testified that Louise was put in the nursing home because the doctor said she required 24-hour nursing care. Because they previously had tried full-time home nursing care for

Louise without success, they concluded that they had no other choice.

6. Because we affirm the Superior Court, we do not address the Desjardins' contention that the evidence was insufficient to establish an expectation.

7. The Superior Court found there was no evidence of fraud and the plaintiffs do not challenge this finding on appeal.

rests on the party alleging its existence. *Laliberte v. Mead*, 628 A.2d 1050, 1052 (Me. 1993); *Dolloff v. Dolloff*, 593 A.2d 1044, 1045 (Me.1991). When, however, a confidential relationship [8] between the "parties to a deed, gift, contract, or the like" is shown to exist, the burden shifts. *Ruebsamen v. Maddocks*, 340 A.2d 31, 36 (Me.1975) (citing *Eldridge v. May*, 129 Me. 112, 116, 150 A. 378 (1930)). The law imposes a presumption of undue influence on the part of the superior party in a confidential relationship if the superior party obtains a benefit from a transaction between the parties. *Id.* (citing *Eldridge*, 129 Me. at 116).

The trial court found that the Desjardins met their burden of proof of fairness, and demonstrated that they did not exert undue influence on Louise. We review the trial court's findings of fact and conclusions of law for clear error. M.R.Civ.P. 52(a); *Depositors Trust Co. v. Blanchard*, 377 A.2d 101, 103, 104 (Me.1977). We will not overturn findings of fact if "there is any competent evidence in the record to support [them]." *Harmon v. Emerson*, 425 A.2d 978, 981 (Me.1981) (emphasis omitted).

The court found the record "devoid of any evidence that the Desjardins treated Louise unfairly. The court finds that their treatment of her was fair and honest." The court also found that "Louise made her decision to transfer the property at a time when she was still in full control of her senses." There was no evidence that the defendants abused Louise's trust with her finances, kept her from her family or discouraged her from talking with them, or made any suggestions to her regarding the property. Nor was there any evidence that Louise was anything other than forgetful at the time she decided

to give Saltaire to the defendants. The court's conclusion that Louise's conveyance of Saltaire to the Desjardins was not the result of undue influence is supported by competent evidence in the record and is not clearly erroneous.

## II.

The plaintiffs also contend that the trial court improperly denied them a jury trial. A plaintiff has a right to a jury trial in all civil actions "except in cases where it has heretofore been otherwise practiced." Me. Const. art. I, § 20.[9] Our "practice in analyzing the right to a jury trial is to find there is such a right unless it is affirmatively shown that a jury trial was unavailable in such a case in 1820." *Harriman v. Maddocks*, 560 A.2d 11, 12 (Me.1989). The Maine Constitution thus provides a jury trial for legal claims, but not equitable ones. *Town of Falmouth v. Long*, 578 A.2d 1168, 1171 (Me. 1990); *King v. King*, 507 A.2d 1057, 1059 (Me.1986).

The determination whether a claim is legal or equitable depends on the "basic nature of the issue presented, including the relief sought," *Cyr*, 396 A.2d at 1016; *Morris v. Resolution Trust Corp.*, 622 A.2d 708, 716 (Me.1993) (entitlement to jury trial depends on the type of relief requested), and is usually based on the pleadings. *Cyr*, 396 A.2d at 1016. "Where a plaintiff seeks damages as full compensation for an injury, the claim is legal and the plaintiff is entitled to a jury trial." *King*, 507 A.2d at 1059. On the other hand, when the primary recovery pursued is equitable, the inclusion of a request for money damages does not convert the proceeding into an action at law. *See Town of Falmouth*, 578 A.2d at 1172 (no error to deny

---

8. A confidential relationship exists if "there is an 'actual placing of trust and confidence in fact by one party in another and a great disparity of position and influence between the parties to the relation.'" *Depositors Trust Co. v. Blanchard*, 377 A.2d 101, 103 (Me.1977) (quoting *Ruebsamen v. Maddocks*, 340 A.2d 31, 35 (Me.1975)). The Superior Court's finding that there was a confidential relationship between defendant David Desjardins and Louise is not challenged by the Desjardins.

9. The provision states in full:

In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced; the party claiming the right may be heard by himself or herself and with counsel, or either, at the election of the party.

jury trial when request for imposition of civil penalty was secondary to injunctive relief pursued).

We have previously addressed the right to a jury trial in an action for tortious interference with the expectation of a legacy. *See Cyr*, 396 A.2d at 1019. In *Cyr*, the issues were undue influence, duress, lack of capacity, and damages. *Id.* at 1017. Because undue influence, and duress in these circumstances of the case, were species of constructive fraud, *id.* at 1019, and fraud is not "strictly legal or equitable," *id.* at 1019, the "significant factor in determining the right to a jury trial" was the remedy sought. *Id.* We held that the plaintiffs were entitled to a jury trial because they sought damages, "not as incidental to equitable relief but in the alternative and as full compensation for the injury allegedly received." *Id.*

■ The right to a jury trial in this case, presenting the same issues as *Cyr*, also depends on the relief sought. In their complaint, the plaintiffs "demand that this Court order rescission of the conveyance from Louise DesMarais to Defendants David W. and Marie A. Desjardins of the property located at 131 Atlantic Avenue and/or such damages as the Court deems just, plus interest and costs." Although "damages" are included in the demand for relief, they are not included in a manner indicating that they are a separate and alternative form of relief to rescinding the transfer. The clause does not request that damages equal to the value of the property be awarded as an alternative to receiving the property back. Rather, as they conceded at oral argument, the plaintiffs seek rescission of the deed to the Desjardins, and possession of Saltaire. The damages they seek are in the "form of lost rent collected by the Desjardins, fair rent for use of the property by the Desjardins and for loss of use by the DesMarais family." As these are damages that flow from the defendants' possession of the property, and were requested "[i]n addition to returning Saltaire to the DesMarais family," the court properly directed that any trial be without a jury.

## III.

■ Plaintiffs also contend that a summary judgment was improperly entered on their count alleging duress and undue influence. The Desjardins supported their cross-motion for a summary judgment by contending that, at least in the context of this case, duress and undue influence are not really claims separate and apart from the claim for tortious interference. We agree.

> In recognizing [the tort of wrongful interference with the expectation of a legacy], we emphasize that it is one for the wrongful interference with an intended bequest and not an independent action for undue influence or duress. Rather, undue influence and duress, traditionally considered wrongful under well-established precedent, are simply the means by which the alleged interference occurred.

*Cyr*, 396 A.2d at 1019 n. 7 (citations omitted). Moreover, a comparison of the allegations in the counts reveals that they are almost identical, both claiming that the plaintiffs would have received the home but for its conveyance to the Desjardins. The allegations, therefore, substantially merged with the principal claim for interference with the expectation of a legacy. Accordingly, if there was any error in the granting of a summary judgment on the counts of duress and undue influence, the error was harmless.

■ The plaintiffs also contend that the court should not have granted a summary judgment against them on their claim for unjust enrichment. The unjust enrichment claim is separate and distinct from the claim of tortious interference with the expectation of a legacy. Plaintiffs concede, however, that to prevail on the equitable theory of unjust enrichment, they would have to establish that it would be unfair for the Desjardins to retain the benefit of the conveyance of Saltaire, *see A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 n. 3 (Me.1994). Since the court found against them on that very issue of fairness, any error in the grant of a summary judgment was harmless.

## IV.

Lastly, we discern no abuse of the court's discretion in denying plaintiffs' motion to

amend their complaint, filed one day prior to trial, to add a new count alleging breach of fiduciary duty or confidential relationship. *Diversified Foods, Inc. v. First Nat'l Bank of Boston,* 605 A.2d 609, 616 (Me.1992); *Hamor v. Maine Coast Memorial Hosp.,* 483 A.2d 718, 720–21 (Me.1984). Moreover, those counts deal with legal theories with which the court dealt and decided against the plaintiffs at trial.

The entry is:

Judgment affirmed.

All concurring.