Chester P. AVERY, Jr. et al.

v.

Kay A. WHATLEY et al.

Supreme Judicial Court of Maine.

Argued Dec. 4, 1995.

Decided Jan. 25, 1996.

C. Alan Beagle (orally), Beagle, Pearce, Feller & Ridge, Portland, for Plaintiff.

Joseph Lenkowski (orally), Scaccia, Lenkowski & Aranson, Sanford, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Kay A. Whatley, individually, and Kay A. Whatley and Robert B. Whatley, as trustees of the Whatley Family Trust (Whatleys),[1] appeal from the judgment entered in the Superior Court (York County, *Saufley, J.*) in favor of Chester P. Avery, Jr. and Sabra K. Avery (Averys), following a jury trial on their claim that Kay had unduly influenced Gladys Avery in securing a deed to certain premises. The Whatleys contend the court erred (1) by ordering that the action be tried by a jury; (2) by not granting their motion for a judgment as a matter of law at the close of the Averys' case in chief; (3) by its instructions to the jury; and (4) by determining that it was bound by the jury's determinations in its award of equitable relief. By their cross-appeal, the Averys contend the court erred by granting the Whatleys' motion for a summary judgment on their claim for promissory estoppel. Finding no error in the record, we affirm the judgment.

This case arises from a controversy involving the disposition of a beachfront property located on Square Pond in Shapleigh. The record discloses the following: Chester Avery and Kay Whatley are the only two children of Gladys Avery and Chester P. Avery, Sr. In 1947, their parents purchased the beach property which throughout their childhoods and during their adult lives Chester and Kay enjoyed. When their father

---

1. The complaint originally named only Kay Whatley as a defendant. It was later amended to include as defendants both Kay and her husband, Robert Whatley, as trustees of the Whatley Family Trust, to which Kay conveyed the property at issue.

died in 1971, title to the beach property vested in their mother, Gladys.

In 1974, the Averys purchased a nearby parcel of landlocked property with the understanding that they and their guests would have use of the beach property. Both Gladys and Kay were aware of and participated in this use of the beach property. In 1976 Gladys executed a will devising most of the beach property to Kay and a 100–foot parcel to Chester to provide access from the Averys' property to the beach.

On February 23, 1986, Gladys was admitted to the hospital, suffering from blindness as a result of severe glaucoma, diabetes, and various problems with her hips. At the time of her admission to the hospital, Gladys's memory was described as "considerably impaired." During her stay in the hospital, various medications were administered to her and a medical report referred to her as "ill" and "appearing very weak."

On February 28, while still in the hospital, Gladys executed a new will in which she devised the entire beach property to Kay and Robert Whatley jointly. On May 6, 1986, after her release from the hospital, Gladys executed yet another will, again devising the beach property to Kay and Robert Whatley.[2] Following her release from a second hospitalization and while in Kay's care, Gladys conveyed to Kay a deed for the entire beach property in June 1986.

After learning of Gladys's conveyance to Kay, the Averys attempted to obtain an easement from Kay to access and use the beach property. Having failed in these attempts, they commenced this action in 1992, shortly after Gladys's death. By their complaint the Averys, *inter alia,* sought damages, as an alternative to equitable relief, for Kay's wrongful interference with Chester's expected legacy by means of undue influence. Following a trial on their claim for damages, the jury returned a special verdict finding that

(1) a confidential relationship had existed between Kay and Gladys and (2) Kay did not affirmatively demonstrate her entire fairness with Gladys and Gladys's freedom from Kay's undue influence. The jury awarded the Averys $40,000 in damages. The court subsequently granted the Averys' request for equitable relief in lieu of money damages by imposing a constructive trust on the property and ordering the Whatleys to convey to the Averys the 100–foot parcel that provided access from the Averys' property to the beach. From the judgment entered accordingly, the Whatleys appeal and the Averys cross-appeal.

I.

The Whatleys first contend the court erred by determining that the Averys were entitled to a trial by jury as a matter of right on their claim for money damages. They argue that the damages sought by the Averys were an incidental remedy to their equitable claim of unjust enrichment. Article I, section 20 of the Maine Constitution "safeguards the right to a jury trial on all legal claims."[3] *Cyr v. Cote,* 396 A.2d 1013, 1016 (Me.1979). It does not, however, provide the right to a jury trial for equitable claims. *DesMarais v. Desjardins,* 664 A.2d 840, 844 (Me.1995); *Town of Falmouth v. Long,* 578 A.2d 1168, 1171 (Me. 1990). "[T]he right to a jury trial may exist as to one or more issues in an action in which there are other issues not triable of right to a jury. A plaintiff does not waive his jury right on a legal claim by joining it with a related or an independent equitable claim...." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 38.1 at 550–51 (2d ed. 1970).

■ ■ To determine whether a claim is legal or equitable, we consider the basic nature of the issue presented and the remedy sought by the plaintiff. If the damages sought are not incidental to equitable relief

---

**2.** Although Gladys's May 6 will differed from her February 28 will in several ways, the record reflects that she executed this later will because the former one devised property that she did not own.

**3.** Article I, section 20, states as follows:

In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced; the party claiming the right may be heard by himself or herself and with counsel, or either, at the election of the party.

but in the alternative as full compensation for the injury alleged, plaintiffs are entitled to a jury trial. *Cyr,* 396 A.2d at 1019.

■ Here, the Averys were claiming, *inter alia,* a diminution in the value of their property by reason of Kay's alleged conduct. Accordingly, the trial court properly determined that the Averys' demand for money damages was an alternative legal remedy sought for the alleged unlawful conveyance of the property and that the Averys were entitled to a jury trial on this claim.

## II.

The Whatleys next contend that because the Averys failed to establish a claim against them on which relief could be granted, the court erred by denying their motion for a judgment as a matter of law at the close of the Averys' case in chief. They argue that because prior to the execution of the deed Gladys had executed a will devising the property to Kay and Robert jointly, there could be no interference with Chester's expectation of a legacy.

■ In reviewing the trial court's denial of a motion for a judgment as a matter of law, we examine the evidence in the light most favorable to the plaintiff to determine whether any reasonable view of the evidence and the justifiable inferences to be drawn therefrom can sustain the verdict. *Schiavi v. Goodwin,* 542 A.2d 367, 368 (Me.1988). In the instant case, the Averys were not contesting the will. Rather, the gravamen of their claim was that Kay had by undue influence unlawfully caused Gladys to convey the beachfront property to her. Because at the close of their case in chief the Averys had adduced sufficient evidence, *inter alia,* on which a jury rationally could find that a confidential relationship existed between Kay and Gladys and that Gladys had conveyed the beachfront property to Kay, the trial court properly denied the Whatleys' motion. *See Plimpton v. Gerrard,* 668 A.2d 882 (Me. 1995) (plaintiff need not establish beneficial rights under the will to maintain action challenging inter vivos transfer of property).

## III.

■ The Whatleys next contend that because a confidential relationship must be proved by clear and convincing evidence, the trial court erred by its instruction to the jury that a confidential relationship need be proved only by a preponderance of the evidence. We are aware that some uncertainty may have arisen since our decisions in *Depositors Trust Co. v. Blanchard,* 377 A.2d 101, 103 (Me.1977), and *Ruebsamen v. Maddocks,* 340 A.2d 31, 34 (Me.1975), concerning the standard of proof by which a plaintiff must establish facts giving rise to the application of the presumption of undue influence. To remove this uncertainty, we again restate our holding in those cases: The underlying factual basis giving rise to the presumption of undue influence, i.e., the existence of a confidential relationship and the transfer of assets to the superior party in that relationship, must be established by a *preponderance* of the evidence.

## IV.

■ Finally, the Whatleys contend the trial court erred by determining it was bound by the jury's finding of undue influence in ruling on the Averys' request for equitable relief in lieu of money damages. Because this precise issue has not heretofore been presented to us, we examine the decisions of other courts relating to this issue.

In a recent decision the First Circuit Court of Appeals concluded that when legal and equitable claims arise from a common issue of fact, "the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim." *Perdoni Bros., Inc. v. Concrete Systems, Inc.,* 35 F.3d 1, 5 (1st Cir.1994) (quoting *Lincoln v. Bd. of Regents,* 697 F.2d 928, 934 (11th Cir.1983), *reh'g denied,* 705 F.2d 471 (11th Cir.1983), *cert. denied,* 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983)). *See also Breese v. Steel Mountain Enter., Inc.,* 220 Mont. 454, 716 P.2d 214, 216 (1986) (adopting the reasoning contained in *Lincoln,* 697 F.2d at 934, quoted *supra* ); *Harris v. Int'l Paper Co.,* 765 F.Supp. 1509, 1511, n. 3 (D.Me.1991), *vacated in part on other grounds,* 765 F.Supp. 1529 (D.Me.1991) (con-

cluding that this approach to fact issues that are common to legal and equitable claims is "universally accepted"); *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 511, 79 S.Ct. 948, 957, 3 L.Ed.2d 988 (1959) (when legal and equitable claims in same action, legal claims should be decided first so that plaintiff's right to a jury trial on legal issues will not "be lost through prior determination of equitable claims"); 1 Field, McKusick & Wroth, *Maine Civil Practice* § 38.2 at 553 (2d ed. 1970) (when a single action with fact common to both legal and equitable claims, determination in one claim binding on parties with respect to other claim) (citing *Leimer v. Woods,* 196 F.2d 828 (8th Cir.1952)).

In the instant case, the order of the trial is not challenged. The Averys' alternative claims for legal and equitable relief are based on common issues of fact. Persuaded by the dual needs of (1) safeguarding a plaintiff's right to a jury trial on legal claims and (2) upholding the principles of collateral estoppel,[4] we conclude the trial court properly determined that it was bound by the jury's factual finding of undue influence in its consideration of the Averys' claim for equitable relief.

Because we affirm the judgment of the trial court, we need not address the contention set forth in the Averys' cross-appeal.

The entry is:

Judgment affirmed.

All concurring.

---

**4.** *See LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412, 432 (2d Cir.1995) (explaining that "[w]hen two claims asserted by the same plaintiff are tried together and one is to be decided by the jury and the other by the judge, principles of collateral estoppel prevent the judge from making findings of fact contrary to those of the jury").